OPINION OF THE COURT BY CHIEF JUSTICE MINTON
*11 A circuit court jury convicted Carlis Hall of three misdemeanors (theft by unlawful taking, under $500; resisting arrest; and third-degree terroristic threatening) and four felonies (theft by unlawful taking, over $500 but less than $10,000; first-degree fleeing or evading; and two counts of first-degree wanton endangerment), and recommended a sentence totaling 20 years' imprisonment (365 days for each of the misdemeanors to be concurrently run with each other and five years for each felony to be consecutively run).
The trial court's final judgment imposed the recommended sentence and further imposed $50 of the fines recommended by the jury together with court costs and court facility fees. Hall now appeals the resulting judgment as a matter of right.[1]
We reverse the judgment on three issues: (1) the imposition of the $50 fine; (2) the conviction for theft by unlawful taking, over $500 but less than $10,000; and (3) the resisting arrest conviction. We affirm the remainder of the judgment and remand the case to the trial court for entry of a new judgment consistent with this opinion.
I. FACTUAL BACKGROUND.
The events culminating in Carlis Hall's multiple charges and convictions began when Walmart employees notified police that he fled the store without paying for a flashlight and drove away in an automobile.
Officer Everidge located Hall in his automobile from the description given by Walmart and signaled for the driver to pull over. As Officer Everidge pulled in behind the automobile, Hall emerged from it and ran. Officer Everidge pursued Hall on foot. Officer Maggard arrived at the scene and left her cruiser to join the chase. Hall made his way back to Officer Maggard's cruiser, got in, and closed and locked the door. Officer Everidge broke the window of the cruiser and reached through the broken window in attempt to grab Hall, but Hall managed to free himself and sped away in Officer Maggard's cruiser.
Officer Everidge, joined by Officer Jones, attempted to pursue Hall in their police cruisers, reaching speeds of over 110 mph. Officer Everidge saw Hall turn onto a dirt road that led toward a strip mine before losing sight of him.
The officers found the cruiser abandoned on a dirt road down in a gully. It appears from the record as though Hall possessed the cruiser for less than 30 minutes. Three days later, police found Hall and arrested him.
II. ANALYSIS.
A. Trial Court Erred When It Denied Hall's Motion for Directed Verdict on the Charge of First-Degree Theft by Unlawful Taking, Over $500 but Less Than $10,000.
Hall argues that the trial court erred when it denied his motion for directed verdict on the charge of first-degree theft by unlawful taking, over $500 but less than $10,000. At the close of all the evidence, Hall moved for directed verdict on the charge and specifically argued that the Commonwealth failed to prove he intended to deprive the police department of its cruiser. The motion properly preserves this issue for appellate review.
*12 "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[2] So we shall only overturn the trial court's denial of Hall's motion for directed verdict if it was clearly unreasonable for the jury to find guilt in Hall for this charge. Hall argues that no proof existed as to his intent to deprive , and thus the trial court should have granted his motion for directed verdict on this charge.
Hall also argues that the trial court erred when it refused to instruct the jury on the charge of unauthorized use of a motor vehicle, a lesser-included offense of first-degree theft by unlawful taking. Because we conclude that the trial court should have granted Hall's motion for directed verdict, we need not reach this issue.
Hall's argument implicates a larger issue surrounding KRS 514.030(1)(a) and 514.010(1) -specifically, the meaning of intent to deprive under the first definition of deprive given in KRS 514.010(1)(a), i.e. possessing the intent to withhold property of another permanently. KRS 514.030(1)(a) states, "[A] person is guilty of theft by unlawful taking or disposition when he unlawfully: Takes or exercises control over movable property of another with intent to deprive him thereof."[3] KRS 514.010(1) defines Deprive to mean: "(a) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or (b) to dispose of the property so as to make it unlikely that the owner will recover it."
Regarding the trial court's denial of Hall's directed verdict motion on his theft charge, Hall argues that no proof existed to show he had an intent to deprive the officers of their cruiser. Notably, this issue rests on what exactly intent to deprive means.
To start, KRS 514.010(1) provides four definitions of deprive : 1) to withhold property of another permanently;[4] 2) to withhold property for so extended a period as to appropriate a major portion of its economic value;[5] 3) to withhold property with intent to restore it only upon payment of reward or other compensation;[6] or 4) to dispose of the property so as to make it unlikely that the owner will recover it[7] . We must determine the applicability of each of these definitions to the facts of this case to determine the correct result in this case. As a matter of clarification, per the statutory language, we are determining whether Hall had the intent to deprive, not simply whether Hall actually deprived the police of the cruiser.
We shall begin by addressing intent to deprive under the third definition of deprive , because it clearly does not apply in this case. No evidence exists that Hall intended to withhold the cruiser from the police until he received some sort of payment of reward or other compensation. The same is true of intent to deprive under the second definition of deprive : No evidence exists that Hall intended to withhold property for so extended a period as to *13 appropriate a major portion of its economic value.
Intent to deprive under the fourth definition of deprive warrants some discussion. Recall that Hall disposed of the police cruiser in the middle of a road, albeit on a dirt road off the beaten path, while being chased by officers. Absent any evidence of irrational thinking or incapacitation, Hall had to have known that the police were following close behind. And, recall that Hall took a police cruiser, not a random civilian vehicle. No rational or reasonable jury could say that, based on the facts of this case, Hall had the intent to dispose of the police cruiser so as to make it unlikely that the police would ever find it.
Intent to deprive under the first definition of deprive provides the source of most debate in this case: Did Hall have the intent to withhold the police cruiser permanently? At first glance, one could say that, by abandoning the police cruiser, Hall relinquished possession of the police cruiser, and therefore did not withhold the property of Hall permanently. But this reading of this first definition of deprive mischaracterizes withhold. While previous cases have dealt with this issue, a review of those cases exposes this Court's lack of clarity on the meaning of intent to withhold the property of another permanently.[8] We shall attempt to provide that clarity today.
To interpret correctly intent to withhold property of another permanently is to say that the defendant intends that the property never be restored to its rightful owner, where intent can be inferred from facts and circumstances[9] . A defendant does not need to maintain actual possession over the taken properly at all times after taking the property-a defendant can possess the intent to withhold property of another permanently if evidence exists showing that the defendant intended that the rightful owner never exert actual possession over the property again. In other words, as long as evidence exists supporting the assertion that the defendant intended that the property never be restored to its rightful owner, the defendant need not maintain constant actual possession of the property to be said to have the intent to withhold property of another permanently.
A defendant can have the intent to withhold property of another permanently even if the defendant abandons the property. The abandonment of property, rather than the restoration of the property to its rightful owner, means that the defendant is still preventing the owner from exerting actual possession over the property, i.e. the defendant is withholding the property from the rightful owner. But abandonment does not always mean that the defendant possesses the intent to withhold property of another permanently, because evidence could show that the defendant abandoned property with the intent that the property be restored to the rightful owner.[10]
*14 The question we must answer is whether, based on the evidence presented in this case, Hall intended that the police cruiser never be restored to its rightful owner. We think that no rational or reasonable jury can find this to be true.
It is true that, based on the rules of law espoused in Waddell[11] , Byrd[12] , and Caldwell[13] , this Court should uphold the trial court's denial of Hall's motion for directed verdict and refusal to give the jury a lesser-included jury instruction of unauthorized use of an automobile. But absent a claim by the Commonwealth, with evidence to support that claim, that the defendant truly intended to prevent police from ever recovering the police cruiser, we cannot say that Hall intended that the police cruiser never be restored to the police. No rational person would think that an individual who uses a police cruiser as a getaway car and who abandons that police cruiser in the middle of a road, knowing that police are following close behind, intends that the police Cruiser never again be restored to the police. Instead, we think that Hall was simply trying to evade the police.
As a matter of clarification, the totality of the circumstances of this case supports the conclusion that Hall did not have the requisite intent to withhold under either the first or fourth definitions of such phrase to be convicted of theft by unlawful taking. Some of the facts supporting our conclusion include: the taking of a marked police cruiser, not a civilian vehicle; the entirety of Hall's resisting of arrest and his protracted flight from the police, beginning with the failed attempt to apprehend Hall at Walmart and the chase that continued throughout the night; and Hall's sudden abandonment of the cruiser in the roadway with police in hot pursuit.
The dissent disputes the conclusion that the evidence adduced at trial fails to show that Hall had the requisite intent to deprive the police of their cruiser, suggesting instead that sufficient evidence of intent to deprive under the first and fourth definitions of that phrase in *15 KRS 514.010(1)(a) and (b) exists to create a submissible jury issue on the charge of theft by unlawful taking.
The dissent's argument here relies on the incorrect assertion that the majority's conclusion of a failure of proof on intent to deprive rests exclusively on Hall's abandonment of the cruiser and the police's subsequent quick discovery of it. In truth, the conclusion is based on the totality of the evidence adduced at trial.
The dissent cites Lawson to support its position. This attempted comparison does not help in resolving the present case, not only because of the significant factual differences, but also because the Lawson court did not have the benefit of the articulated standard for intent to deprive that we have provided today, calling into question the reasoning in Lawson.
Simply put, we are confined by the facts before us in the present case. And the dissent has failed to identify any of those facts that it would use to convict Hall of theft by unlawful taking. Instead, the dissent theorizes about Hall's intent based on conjecture and speculation, lacking facts to bolster its theory as to Hall's intent. But no reasonable jury based on the totality of the facts and circumstances presented in the present case could find Hall guilty of theft by unlawful taking under any definition of intent to deprive. Without any specific fact indicating that Hall had an affirmative intention to permanently deprive the police of their cruiser, the totality of circumstances establishes, at most, that Hall was indifferent to the restoration of the car to its owner-indifference does not equate to intent.
Under the meaning of intent to withhold property of another permanently as we have provided in this case, we overrule any past precedent only to the extent that its analysis conflicts with this meaning. In general, as cases like Waddell, Byrd, Lawson, and Caldwell have held, the taking and abandoning of property could allow the jury to infer that the defendant had the intent to withhold permanently the victim's property from the victim, i.e. intending that the property never be restored to the true owner. If the facts of the case support this inference because they are factually analogous to past cases, then a trial court would not err in denying a defendant's motion for a directed verdict or refusing to give a lesser-included offense jury instruction. But this is not to equate abandonment of property with intending to withhold it -a defendant could abandon property with the intent that it be returned to the rightful owner.
In this case, based on these specific facts, we conclude that no reasonable juror would think that a defendant who uses a police cruiser to flee from police, then abandons it in the middle of the road with the police in hot pursuit, intends that the property not be restored to the police. We conclude that the trial court erred by denying Hall's motion for directed verdict on the theft charge, so we reverse this conviction. And by so doing, we render moot Hall's argument that the trial court should have granted his request for a lesser-included offense instruction for unauthorized use of an automobile.[14]
*16 B. The Trial Court Properly Denied Hall's Motion for Directed Verdict on the Charges of First-Degree Wanton Endangerment.
Hall argues that the trial court erred when it denied his motion for directed verdict on the charges of wanton endangerment of Officer Everidge, specifically because the Commonwealth raised insufficient evidence of danger of serious physical injury or death. This issue is preserved by virtue of Hall's motion. We shall only overturn the trial court's denial of Hall's motion for directed verdict if it was clearly unreasonable for the jury to find guilt in Hall for this charge.
KRS 508.060(1) states, "A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 500.080(15) defines serious physical injury to mean "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ."
Without question, a reasonable jury could conclude that Officer Everidge could have been seriously injured under the circumstances. Recall that Everidge attempted to subdue Hall from outside the Officer Maggard's cruiser while Hall remained inside, driving away during Everidge's attempt. Everidge could have easily been caught in some way with his arms inside the cruiser, or could have been run over by the cruiser, so as to cause serious physical injury to him. Thus, because it was not unreasonable for the jury to find Hall guilty on the charge of first-degree wanton endangerment to Officer Everidge, we affirm the trial court's denial of Hall's motion for directed verdict on this issue.
C. Trial Court Did Not Err by Refusing to Admonish the Jury on Comments Made by Prosecutor During Prosecutor's Closing Argument.
Hall argues that the Commonwealth committed prosecutorial misconduct during its closing argument by making inappropriate comments. During the Commonwealth's closing argument, Hall asked for an admonition, but the trial court denied the request. This request sufficiently preserves this issue for review.
Specifically, Hall takes issue with the Commonwealth in the following ways:
(1) the Commonwealth stated the defense made a "surreal, philosophical invitation to guess" argument and that the defense told the jury an "untruth" regarding the theft of the police cruiser;
(2) the Commonwealth vouched for the police witnesses, and conveyed unity between the Commonwealth and police, stating, "We want you to realize how we view these cases, as the Commonwealth, how the officers look at these cases as well. This is a common-sense approach in prosecution by the officers and this office."; and
(3) the Commonwealth urged the jury to "return a meaningful verdict," which, the Commonwealth conveyed, would be a verdict that showed the jury's respect for the police, in addition to the Commonwealth stating, "These officers are honorable men and women.... Let's return a verdict that respects that."
"Prosecutorial misconduct is a 'prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an *17 unjustified punishment," '[15] which includes making improper comments during closing arguments.[16] Closing arguments are not evidence, and prosecutors are given "wide latitude" during closing arguments.[17] So reversal is warranted "only if the misconduct is 'flagrant', or if each of the following three conditions is satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with a sufficient admonishment to the jury."[18]
Hall argues the satisfaction of the Matheney factors regarding two of Hall's charges, theft by unlawful taking, over $500 and under $10,000, and first-degree wanton endangerment of Officer Everidge. However, because we have already reversed and vacated Hall's theft by unlawful taking, over $500 and under $10,000, charge, we need only address this issue as it relates to Hall's first-degree wanton endangerment charge.
While the second and third Matheney elements are satisfied regarding Hall's first-degree wanton endangerment charge-defense counsel objected to the Commonwealth's comments and the trial court did not give the jury an admonition-the first element is not. Proof of the defendant's guilt on this charge is overwhelming in this case.
It is undisputed that Officer Everidge attempted to subdue Hall from outside the police cruiser as Hall remained inside the vehicle, eventually driving away while Officer Everidge attempted to reach inside the vehicle. Proof of these circumstances, which any reasonable jury would certainly find guilt in a defendant for first-degree wanton endangerment, was overwhelming.
So reversal is not warranted under the Matheney test. But we must also analyze the error under the "flagrancy" test. We use the Dickerson test to determine if the prosecutor's comments were "flagrant": "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused."[19]
Regarding the Commonwealth's "untruth" and "surreal, philosophical invitation to guess" comments, these comments came in response to Hall's assertion that because he took the car for the purpose of fleeing from police, he must be innocent of theft by unlawful taking. The Commonwealth called Hall's argument an "untruth" relying on the principle, "Flight is always some evidence of a sense of guilt."[20] The Commonwealth argues that based on this principle, the prosecutor simply sought to correct Hall's assertion because Hall's assertion misled the jury. After the trial court cautioned the prosecutor's use of "untruth," prompted by objection from Hall, the prosecutor continued his discussion of the problem with Hall's argument on this charge, characterizing the argument as a "surreal, philosophical invitation *18 to guess." However, because these comments relate to Hall's theft by unlawful taking charge, which we have reversed, a flagrancy determination of these comments has been rendered moot.
Regarding the prosecutor's comments surrounding the officers, for the sake of capturing the entirety of Hall's argument, we lay out specifically what Hall is objecting to:
We want you to realize how we view these cases, as the Commonwealth, how the officers look at these cases as well. This is a common-sense approach in prosecution by the officers and this office.
These officers by their sworn duty, by their training, by their education, by their chosen desire to protect us, to protect the public, could not ignore their duty.
These guys are trained. They have common sense. They care about the community, care about the people they serve, which is all of us.
I'm going to ask you to return the most meaningful verdicts and decisions you can make in this case. I want you to realize one thing: we've reviewed this, we've looked over the evidence, everything is obvious. Theft by unlawful taking is obvious. You would not have been given the instructions given if there was no evidence upon which you can decide these things.
These officers are honorable men. And women. All shapes and sizes and various colors. Let's return a verdict that respects that and their duty to us.
Per our decisions in Carver v. Commonwealth[21] and Lewis v. Commonwealth[22] , while vouching for the credibility of witnesses is impermissible, the Commonwealth's statements in closing argument to the jury in this case do not amount to vouching for the credibility of the officers. In Carver, we cited U.S. v. Francis[23] to provide a definition of "vouching." The Sixth Circuit stated, "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness."[24] Generally, improper vouching involves either blunt comments, such as, "I think [the witness] was candid. I think he is honest,"[25] or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony[26] ,[27]
None of the statements made by the Commonwealth amount to "vouching." The comments made by the prosecutor in this case differ too greatly from the Sixth Circuit's and this Court's contemplation of what constitutes "vouching" for this Court to characterize the prosecutor's comments in that way. The law affords both the prosecution and defense great latitude in closing arguments and expanding the definition of "vouching" to include the comments made by the prosecution in this case would too greatly restrict that latitude.
Lastly, we must evaluate the prosecutor's comment that essentially *19 amounts to a "send a message" statement. While "[i]t is true that this Court has repeatedly indicated that 'send a message' statements are improper in the Commonwealth and prosecutors should not engage in such argument,"[28] such statements are not necessarily reversible error.[29] Prosecutorial misconduct claims may only reverse charges if the conduct "was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings."[30]
Under the "flagrancy" test, while the prosecutor's comment may have prejudiced Hall and was deliberately made, it was an isolated comment and under the blanket of overwhelming evidence of guilt. Additionally, under the Brewer test, this one comment cannot be said to have undermined the overall fairness of the proceedings. Prosecutors cannot be expected to never make a prejudicial comment, and the law does not expect them to; however, we recognize that prosecutors can affect the overall fairness of a proceeding by making inappropriate comments in the heat of passion. Here though, the prosecutor's comment in this case is simply harmless and does not warrant a reversal as it was an isolated comment regarding a charge, first-degree wanton endangerment, supported by overwhelming proof.
Thus, we hold that none of the prosecutor's comments amount to prosecutorial misconduct so as to warrant a reversal of Hall's conviction of first-degree wanton endangerment. We affirm the trial court with respect to this issue.
D. The Commonwealth Concedes Unanimity Error in Resisting-Arrest Instruction.
Hall challenges the jury instructions relating to his charge of resisting arrest. Under KRS 520.090 :
(1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace office ... from effecting an arrest of the actor ... by: (a) Using or threatening to use physical force or violence against the peace officer or another; or (b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.[31]
The resisting arrest jury instruction stated, in part:
You will find the Defendant guilty of Resisting Arrest under this Instruction if, and only if, you believe beyond a reasonable doubt all of the following:
B. That in [recognizing an officer to be acting in his official capacity as a peace officer and intentionally preventing the officer from effecting the defendant's arrest], (1) the Defendant used or threatened to use physical force or violence against [the officer] OR (2) Created a substantial risk of causing physical harm to [the officer by slamming a car door when the officer was reaching in]....
"Section Seven of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases."[32] A verdict is not unanimous when the jury is presented with finding guilt under either of two theories in one instruction *20 without specifying which theory it relied upon.[33]
Hall argues, and the Commonwealth concedes, that the jury instruction is erroneous. The trial court gave the jury two options by which it could find Hall guilty of resisting arrest, and the jury failed to specify which one fact scenario it believed to be satisfied beyond a reasonable doubt. This is the exact error Kentucky law seeks to prevent. The only remedy is to reverse the judgment on this charge and remand this case to the trial court for further proceedings on this charge.
E. The Trial Court Did Not Fail to Consider Probation.
Hall argues that the trial court erred by failing to consider probation when imposing Hall's sentence. Both parties agree this issue is unpreserved. For unpreserved issues, this Court will only overturn the trial court's ruling if "palpable error" exists in that ruling.[34] Palpable error requires a showing that the alleged error affected the "substantial rights" of a defendant, where relief may be granted "upon a determination that manifest injustice has resulted from the error."[35] To find that "manifest injustice has resulted from the error," this Court must conclude that the error so seriously affected the fairness, integrity, or public reputation of the proceedings as to be "shocking or jurisprudentially intolerable."[36]
In its final judgment, the trial court stated the following:
Having given due consideration to the PSI prepared by the Division of Probation and Parole, and to the nature and circumstances of the crimes, as well as the history, character and condition of the defendant, and the recommendation of the jury and any matters presented to the Court by the defendant and his counsel, this Court finds that imprisonment is necessary for the protection of the public because the defendant is ineligible for probation, probation with an alternate sentencing plan, or conditional discharge because of the applicability of KRS 532.080, KRS 439.3401, or KRS 533.06 [sic]. Furthermore, because the defendant is in need of correctional treatment that can be provided most effectively by the defendant's commitment to a correctional institution, and that probation, probation with an alternative sentencing plan or conditional discharge would unduly depreciate the seriousness of the Defendant's crime. (emphasis supplied)
Hall and the Commonwealth agree that the trial court incorrectly found that Hall was ineligible for probation. But KRS 533.010(2) allows a judge to refuse to grant probation if:
(a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime;
(b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or
(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.
This Court dealt with a similar issue in Gaines v. Commonwealth, in which the Court stated the following:
*21 [E]ven if we had concluded that the trial judge erred in refusing to even consider granting probation, the judge nonetheless made all of the factual findings that would justify his refusal to grant probation. The judge found that if Appellant was released on probation or conditional discharge, there was a substantial risk that she would commit another crime; he also found that Appellant was in need of treatment most effectively provided in a correctional institution; and finally, he found that probation or conditional discharge would unduly depreciate the seriousness of Appellant's crimes. Consequently, it is manifest that upon a proper consideration of probation as a permissible sentencing option, based upon express findings of fact, the trial court would have been bound to reject that sentencing alternative and impose a sentence of imprisonment.[37]
In this case, per the statements made in its judgment, the trial court found KRS 533.010(2)(b) and (c) to be satisfied, after making all of the necessary findings of fact, thus allowing the trial court to refuse to grant probation. While the court erred in stating that Hall was ineligible for probation, the satisfaction of KRS 533.010(2)(b) and (c), in addition to this case's analogous circumstances with Gaines, lead us to hold that the trial court did not err on this issue; thus, we affirm the trial court on this issue.
F. The Trial Court Erred by Imposing a Fine but Not by Imposing Court Costs, Court Facilities Fee, and Bond.
As part of Hall's sentencing, the trial court imposed a $50 fine, $135 in court costs, and $25 in court facility fees. Hall argues that the trial court erred by failing to assess Hall's ability to pay these fines and costs. Both parties agree this issue is unpreserved. But the imposition of fines, court costs, and court facility fees "is a true 'sentencing issue' which cannot be waived by failure to object."[38] "Rather, the imposition of an unauthorized sentence is an error correctable by appeal, by writ, or by motion pursuant to RCr 11.42...."[39]
Regarding the imposition of the fine, KRS 534.040(4) states, "Fines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." If a defendant is provided court-appointed counsel, the Court "may assume the trial court determined that he was an indigent person."[40] Because appointed counsel represented Hall throughout the proceedings, we may assume, and the Commonwealth concedes, that the trial court improperly imposed a fine in violation of KRS 534.040(4). So we reverse the judgment insofar as it imposes the $50 fine on Hall.
Regarding the imposition of court costs, including the court facilities fees, KRS 23A.205(2) statutorily mandates the imposition of court costs on a convicted defendant, "unless the court finds that the defendant is a poor person defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future." But we addressed this exact situation in Spicer v. Commonwealth :
The assessment of court costs in a judgment fixing sentencing is illegal only if it *22 orders a person adjudged to be "poor" to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a facially-valid sentence to determine if there was in fact error. If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.
In this case, the record does not reflect an assessment of Appellant's financial status, other than that he was appointed a public defender and permitted to proceed on appeal in forma pauperis. A defendant who qualifies as "needy" under KRS 31.110 because he cannot afford the services of an attorney is not necessarily "poor" under KRS 23A.205.[41] Thus, simply because Appellant was represented by a public defender does not mean he is necessarily exempt from court costs. Because the trial judge's decision regarding court costs was not inconsistent with any facts in the record, the decision does not constitute error, "sentencing" or otherwise, and we affirm the imposition of court costs and the arrest fee.[42]
Hall conceded that he never asked the trial court to determine his poverty status, there are no facts in the record that suggest that the trial court presumed the defendant to be an indigent or poor person, and the trial judge's decision was not inconsistent with any facts in the record, exactly like Spicer. As quoted above, Spicer and Maynes reject the contention that appointment of a public defender or proceeding on a case in forma pauperis automatically impute "poor" status to a defendant, so to exempt the defendant from the payment of court costs. Additionally, in Spicer, the defendant's incarceration, and therefore the inability to earn a substantial wage, did not persuade this Court to lift the imposition of court costs and fees. Hall has provided no reason for us to depart from this precedent. Lastly, there are no facts in the record showing inconsistency between the trial judge's decision to impute court costs and an indication that Hall may, in fact, qualify as a poor person unable to pay these costs currently or in the future. In other words, nothing in the record indicated to the trial court, or indicates to this Court, that Hall is a poor person unable to pay these costs now or in the future.
Hall's main contention is that the trial court erred by not undertaking an assessment of his ability to pay the court costs and fees before imposing them upon him, citing Maynes for its statement, "Without some reasonable basis for believing that the defendant can or will soon be able to pay, the imposition of court costs is indeed improper."[43] But this statement does not shift the onus from the defendant to the trial court to raise on its own motion an issue about the defendant's ability to pay before imposing court costs; rather, this statement simply reinforces the notion that a trial court must hold true to *23 KRS 23A.205(2) and not impose court costs on a poor defendant unable to pay these costs currently or in the future. In other words, a trial court would have no reasonable basis for imposing costs on a defendant adjudged to be poor, as the trial court, in its characterization of a defendant as poor, would have determined that the defendant cannot currently or in the future pay the imposed court costs; so the imposition of court costs in a situation such as this would be improper. This is the correct reading of our statement in Maynes.
Additionally, Spicer clearly establishes a responsibility on the part of a defendant to raise and show poverty status. Hall has not once in his entire case put forward any facts in an attempt to show that he is a poor person unable to pay the statutorily mandated court costs now or in the future. It was reasonable for the trial court to impose the statutorily mandated court costs and fees it did in this case because there was no reason for the trial court to believe that Hall is a poor person unable to pay these costs or fees now or in the future. In other words, there was no indication, offered by Hall or otherwise, that Hall qualified as a poor person unable to pay court costs and fees currently or in the future. So, in accordance with Spicer and Maynes, we affirm the trial court's imposition of court costs, including the court facilities fees, on Hall.
III. CONCLUSION.
We affirm the judgment, in part, and reverse it, in part. We remand the case to the trial court for entry of a new judgment consistent with this opinion.
All sitting.
Minton, C.J., Hughes Venters, and VanMeter, JJ., join.
Wright, J., concurs in part and dissents in part by separate opinion in which Cunningham and Keller, JJ., join.

Ky. Const. § 110 (2)(b).

Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991) (citing Commonwealth v. Sawhill, 660 S.W.2d 3, 5 (Ky. 1983) (quoting Trowel v. Commonwealth, 550 S.W.2d 530, 533 (Ky. 1977) )).

(emphasis added).

KRS 514.010(1)(a).

Id.

Id.

KRS 514.010(1)(b).

See Waddell v. Commonwealth, No. 2013-SC-000499-MR, 2014 WL 2810080 (Ky. June 19, 2014) ; Byrd v. Commonwealth, No. 2007-SC-000706-MR, 2008 WL 5051612 (Ky. Nov. 26, 2008) ; Caldwell v. Commonwealth, 133 S.W.3d 445 (Ky. 2004) ; Lawson v. Commonwealth, 85 S.W.3d 571 (Ky. 2002).

"Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." Anastasi v. Commonwealth, 754 S.W.2d 860, 862 (Ky. 1988) (citing Rayburn v. Commonwealth, 476 S.W.2d 187 (Ky. 1972) ).

A defendant who has seen the error of his ways but does not want to be caught, could abandon taken property in such a way as to restore ownership to the rightful owner, such as through placement of the property at the location of a third party known to the defendant. In this way, the defendant abandoned the property, but intended that the property be restored to the rightful owner.

In Waddell, a defendant overpowered an officer, took a police van, and abandoned it on a road near the edge of a cornfield where it was found the next day with the keys still in the ignition. Waddell, 2014 WL 2810080 at *1-2. This Court stated that because KRS 514.030"is intended to include all statutory and common law offenses involving unlawful appropriation of property," one of these offenses being "Abandonment or Failure to Return Motor Vehicle," that, on these facts, the trial court did not err in denying Waddell's motion for a directed verdict on the charge of theft by unlawful taking or disposition of property. Id. at *3-4.

"Appellant was clearly exercising control over a car that was not his, which is sufficient to satisfy [KRS 514.030 ]." Byrd, 2008 WL 5051612 at *4.

If a defendant is charged with and convicted of a theft crime and the trial court refused to instruct the jury on the lesser-included offense of unauthorized use of an automobile, no error occurred in the refusal as long as: (1) no credible evidence exists that would reasonably support a belief that the defendant intended to return the vehicle to its rightful owner and (2) credible evidence exists affording the jury the belief beyond a reasonable doubt that the defendant knowingly operated an automobile without the owner's consent. Caldwell, 133 S.W.3d at 451. In Caldwell, the defendant knowingly stole a vehicle, fled from police, abandoned the vehicle, and fled on foot. Id. at 449. The Court determined that on these facts, the defendant, charged and convicted of theft by unlawful taking, indisputably displayed intent to not return the vehicle to its owner, thus depriving the owner. Id. at 451. As a result, the Court determined that the trial court did not err when denying the defendant's request for a lesser-included offense jury instruction. Id.

Although we have rendered this issue moot, we acknowledge that a charge of unauthorized use of an automobile would have been the proper charge in this case. KRS 514.100(a) states, "A person is guilty of the unauthorized use of an automobile ... when he knowingly operates, exercises control over, or otherwise uses such vehicle without consent of the owner or person having legal possession thereof." Clearly, Hall never had the consent of the officers to use their vehicle. Therefore, Hall is correct in arguing that the trial court should have instructed the jury on the lesser-included offense of unauthorized use of an automobile in this case.

Murphy v. Commonwealth, 509 S.W.3d 34, 49 (Ky. 2017) (citing Commonwealth v. McGorman, 489 S.W.3d 731, 741-42 (Ky. 2016) ).

Brown v. Commonwealth, 313 S.W.3d 577, 627 (Ky. 2010).

Stopher v. Commonwealth, 57 S.W.3d 787, 805-06 (Ky. 2001).

Matheney v. Commonwealth, 191 S.W.3d 599, 606 (Ky. 2006) (quoting Barnes v. Commonwealth, 91 S.W.3d 564, 568 (Ky. 2002) ).

Dickerson v. Commonwealth, 485 S.W.3d 310, 329 (Ky. 2016).

Hord v. Commonwealth, 227 Ky. 439, 13 S.W.2d 244, 246 (1928).

303 S.W.3d 110, 118 (Ky. 2010).

475 S.W.3d 26, 39 (Ky. 2015).

170 F.3d 546 (6th Cir. 1999).

Id. at 550.

United States v. Kerr, 981 F.2d 1050, 1053 (9th Cir. 1992).

United States v. Carroll, 26 F.3d 1380, 1388 (6th Cir. 1994).

Francis, 170 F.3d at 550.

Benjamin v. Commonwealth, 266 S.W.3d 775, 792 (Ky. 2008).

Brewer v. Commonwealth, 206 S.W.3d 343, 350-51 (Ky. 2006) ; Commonwealth v. Mitchell, 165 S.W.3d 129, 132-33 (Ky. 2005).

Id. at 349.

KRS 520.090(1) (emphasis added).

Wells v. Commonwealth, 561 S.W.2d 85, 87 (Ky. 1978).

Johnson v. Commonwealth, 405 S.W.3d 439 (Ky. 2013).

Kentucky Rule of Criminal Procedure (RCr)10.26.

Id.

Martin v. Commonwealth, 207 S.W.3d 1, 4 (Ky. 2006).

439 S.W.3d 160, 167 (Ky. 2014).

Roberts v. Commonwealth, 410 S.W.3d 606, 611 (Ky. 2013) ; See Spicer v. Commonwealth, 442 S.W.3d 26, 35 (Ky. 2014).

Jones v. Commonwealth, 382 S.W.3d 22, 27 (Ky. 2011).

Id.

Maynes v. Commonwealth, 361 S.W.3d 922, 929 (Ky. 2012).

442 S.W.3d 26, 35 (Ky. 2014).

Maynes, 361 S.W.3d at 930.