# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: JUNE 15, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0084-MR

JAMES A. SANDERS                                                  APPELLANT

|   |   |
|---|---|
| V. | ON APPEAL FROM OHIO CIRCUIT COURT<br>HONORABLE TIMOTHY R. COLEMAN, JUDGE<br>NO. 20-CR-00095 |

COMMONWEALTH OF KENTUCKY                                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A jury of the Ohio Circuit Court found Appellant James A. Sanders guilty of first-degree rape (victim under twelve years of age). The jury recommended the statutory minimum sentence of twenty years and the trial court sentenced Sanders in accordance with that recommendation. Sanders now appeals to this Court as a matter of right. KY. CONST. § 110(2)(b). Following a careful review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Sanders lived with his girlfriend Kyana Fulkerson in the mobile home of Kyana's parents, Nicki and Richard Fulkerson. Also living in the mobile home

were Kyana's seventeen-year-old brother Kygun and six-year-old sister Kaitlyn.[1]

On March 21, 2020 Sanders and Kaitlyn got into an argument and Sanders "swatted" her on the back, leaving a handprint.  Kygun and Richard then began to fight with Sanders because he hit the child.  Sanders ultimately escaped from the home through a bedroom window.  Kaitlyn then informed Nicki that Sanders had "put his winkie in her down there."  Nicki called 911 and reported both the fight and Kaitlyn's statement.  Kaitlyn was taken to the Children's Advocacy Center (CAC) in Henderson, Kentucky.  There Dr. Jennifer Liles conducted an interview with Kaitlyn as well as a physical examination that revealed a "deep notch" in her hymen.

At trial, Kaitlyn testified that Sanders had "put his wiener in me.  In my private."  She testified the incident occurred when Sanders came into her parents' bedroom where she was sleeping, took her to another room, and placed her on top of him.  She testified she could feel hair on Sanders and that she urinated during the incident.  Nicki also testified that Kaitlyn suffered urinary tract infections, nightmares, and stomach pains before disclosing what Sanders had done.  Sanders testified at trial and denied Kaitlyn's allegations.

At trial the jury also heard a recording of Nicki's 911 call in which Nicki told the operator Kaitlyn said Sanders had "put his winkie in her down there." In the background of the 911 call Nicki can be heard asking why Kaitlyn did not tell her about the abuse, to which Richard responded "he said he'd bust

---

[1] "Kaitlyn" is a pseudonym we use here to protect the privacy of the child victim.

2

her ass!" Though the trial court originally excluded the 911 call as more prejudicial than probative, it ultimately admitted the call after finding Sanders implied during cross-examination of Nicki that the Fulkersons fabricated Kaitlyn's story.

Dr. Liles testified at trial that during the CAC interview Kaitlyn told her who had hurt her, though Dr. Liles did not tell the jury the name of the person Kaitlyn identified. Dr. Liles also testified Kaitlyn told her "he put his thing in me" and that the physical examination revealed a deep notch on Kaitlyn's hymen. Dr. Liles further testified that based upon her examination, she reached an opinion that the likelihood Kaitlyn had suffered sexual abuse was "very high."

The jury convicted Sanders of first-degree rape (victim under twelve years of age) and recommended the statutory minimum sentence of twenty years. The trial court entered a judgment sentencing Sanders consistent with that recommendation. Sanders now appeals as a matter of right.

**ANALYSIS**

Sanders raises four issues for our review: (1) whether Dr. Liles impermissibly vouched for Kaitlyn by opining to a "very high" likelihood Kaitlyn was sexually abused; (2) whether Dr. Liles' testimony that Kaitlyn identified the perpetrator was inadmissible hearsay; (3) whether admission of Nicki's 911 call violated the Confrontation Clause and allowed the jury to hear inadmissible hearsay; and (4) whether the prosecutor's comments during closing arguments

3

were prosecutorial misconduct warranting reversal. We review each issue in turn, providing additional facts as necessary.

**I.    The admission of Dr. Liles' testimony that there was a very high probability Kaitlyn was sexually abused is not reversible error.**

Sanders first argues that by allowing Dr. Liles to opine there is a "very high" likelihood that Kaitlyn was sexually abused, the trial court impermissibly permitted Dr. Liles to vouch for the credibility of Kaitlyn's allegations against Sanders. Sanders stated a timely objection to the admission of that testimony and thus his allegation of error is preserved. KRE[2] 103(a)(1); RCr[3] 9.22. We generally review an allegation of nonconstitutional evidentiary error for abuse of discretion. *Mason v. Commonwealth*, 559 S.W.3d 337, 339 (Ky. 2018). We thus consider whether the trial court's ruling was "'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Lopez v. Commonwealth*, 459 S.W.3d 867, 872-73 (Ky. 2015)).

We have long held that "a witness cannot vouch for the truthfulness of another witness." *Hoff v. Commonwealth*, 394 S.W.3d 368, 376 (Ky. 2011). In the context of child sexual abuse cases, we have thus noted that "no expert, including a medical doctor, can vouch for the truth of the victim's out-of-court statements." *Id.* This prohibition extends not only to direct statements of belief in the truthfulness of the victim's allegations, but also to indirectly

---

[2] Kentucky Rules of Evidence.

[3] Kentucky Rules of Criminal Procedure.

4

vouching for the credibility of the victim, for example by testifying that the victim sounded spontaneous or unrehearsed. *Id.*

Though a witness therefore may not directly or indirectly vouch for the truthfulness of a child's sexual abuse allegations, an examining medical doctor may testify "that the child's injuries are consistent with sexual abuse, or consistent with the history given by the child." *Id.* at 377. The doctor may also testify "that *if he accepts the child's statements as true*, the child's physical injuries and history would lead him to conclude that she has been sexually abused." *Id.* A medical doctor also "may in some situations be able to give an opinion that the child has been sexually abused" if that opinion is based "solely on the physical evidence." *Id.* at 376 & n.6. However, where the physical evidence is inconclusive, the doctor may not give an opinion as to whether sexual abuse has occurred. *Id.* at 376.

As to statements regarding a probability that a child's allegations of sexual abuse are true, we have held that a physician generally cannot testify to such a probability, for example by testifying that within reasonable medical probability it is most likely the child's allegations are true. *Id.*; *see also Fowler v. Commonwealth*, 634 S.W.3d 605, 610 (Ky. App. 2021) ("[B]y testifying that it was 'quite probable that the child's story was true[,]' [the examining doctor] impermissibly vouched for the veracity of [the child's] allegations."). However, a physician may testify that based on the "history, *whether true or not*, coupled with [the physical evidence], there was a reasonable probability" that the sexual abuse occurred. *Hoff*, 394 S.W.3d at 376. "The distinction is that this

5

language does not profess a belief in the truth of the victim's claims, but instead leaves that question to the jury." *Id.*

Here, the prosecutor asked Dr. Liles "did you reach an ultimate opinion as to, um—based on your observation and the medical exam—about sexual abuse?" Dr. Liles responded "yes, based on her physical exam plus her disclosure that she told me, that sexual abuse was very high."[4] As an initial matter, we are skeptical of Sanders' contention that Dr. Liles' testimony indicates she based her conclusion not only on her physical examination of Kaitlyn, but also on Kaitlyn's statements to her. Dr. Liles' statement that she based her conclusion in part on Kaitlyn's "disclosure that she told me" could simply have been a reference to the fact that Dr. Liles conducted the physical examination within the context of an allegation of sexual abuse, rather than a reference to any particular statements made by Kaitlyn. Such testimony, relying solely on physical evidence and context rather than upon the particular statements by a child, would not raise vouching concerns because it would be premised not on the credibility of the child's statements but rather upon the results of the examination and the context in which it occurred. *See id.* at 376 & n.6 (noting examining physician testimony that child suffered sexual abuse may be permissible where based solely on the physical evidence).

We nonetheless acknowledge that Dr. Liles' testimony may also reasonably be construed as a statement that she based her conclusion on both

---

[4] While Dr. Liles' response did not employee words such as "likelihood" or "probability," the Commonwealth acknowledges the testimony implied the likelihood of sexual abuse was very high even if Dr. Liles did not use such words.

6

the physical evidence and Kaitlyn's statements, and therefore proceed to consider Sanders' contention that such testimony constituted impermissible vouching. Dr. Liles' testimony—or at least the ambiguity in that testimony—may have led the jury to believe she expressed an opinion as to a probability that Kaitlyn's *statements* were true, thereby indicating a belief in the truth of those *statements*. The testimony includes no limiting language disavowing any particular belief regarding the credibility of Kaitlyn's claims or indicating that that question was left to the jury. Accordingly, to the extent Dr. Liles' testimony (or the ambiguity therein) could have led the jury to believe she expressed a belief in the credibility of Kaitlyn's statements, it violated the rule against vouching.

However, any such error warrants reversal only if it was not harmless. RCr 9.24.

> "[A] nonconstitutional evidentiary error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." "The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

*Mason*, 559 S.W.3d at 339-40 (quoting *Murray v. Commonwealth*, 399 S.W.3d 398, 404 (Ky. 2013)). We conclude that any error here was at most harmless. Although Dr. Liles testified there was a very high probability Kaitlyn suffered sexual abuse, Sanders' counsel followed up that testimony on cross-examination by asking Dr. Liles "you can't state with any certainty" what caused Kaitlyn's injury. Dr. Liles acknowledged she could not do so. Thus, Dr.

7

Liles' subsequent acknowledgement that she could not testify with certainty to the cause of Kaitlyn's injury tended to make harmless any implication in her earlier testimony that she found Kaitlyn's allegations credible. Accordingly, because Dr. Liles' statement—even if erroneous—was rendered harmless by her later testimony, the statement did not sway the judgment and any error in its admission was at most harmless and does not warrant reversal.

## II.	The admission of Dr. Liles' testimony that Kaitlyn told her who abused her is not error.

Sanders next argues error occurred when Dr. Liles provided hearsay testimony that Kaitlyn told her who had hurt her. Sanders acknowledges he did not object to this testimony at trial and thus requests palpable error review given that his allegation of error is unpreserved. We therefore review his argument under that standard.

Our Rules of Evidence exclude as hearsay only statements, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." KRE 801(c). Here, Dr. Liles testified at trial that Kaitlyn told her who had hurt her. Kaitlyn's statement to Dr. Liles regarding who hurt her was not offered to prove the truth of the matter asserted. That is, it was not offered to prove that Kaitlyn identified her abuser to Dr. Liles. The testimony therefore did not constitute hearsay and its admission was not error.

We further note that while Dr. Liles said Kaitlyn told her who hurt her, she did not explicitly or implicitly indicate to the jury the identity of the person Kaitlyn named. Nor was Dr. Liles' written report, which may have included the

8

identity of the person named by Kaitlyn, provided to the jury. Thus, because

Dr. Liles' testimony was not hearsay and did not name the perpetrator

identified by Kaitlyn, we find no error in the admission of that testimony.

### III. Admission of the 911 call at trial did not violate the Confrontation Clause and the 911 call was not hearsay.

Sanders next argues the trial court's admission of a recording of Nicki's

911 call violated the Confrontation Clause. Sanders did not present this

argument to the trial court and his allegation of error on this ground is

unpreserved. Sanders requests palpable error review and we therefore

consider his argument under that standard.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted

with the witnesses against him."[5] U.S. CONST. amend. VI. Admission of a

witness's out-of-court testimonial statement violates this Clause unless the

witness is unavailable and the defendant has had a "prior opportunity for

cross-examination." *Crawford*, 541 U.S. at 68. A corollary of this rule is that if

the witness is *available* for cross-examination, the admission of the out-of-

court statement does not violate the Confrontation Clause.[6] *Edmonds v.*

---

[5] This provision of the Federal Constitution applies to both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004).

[6] The out-of-court statement may of course separately be inadmissible hearsay. Whether introduction of an out-of-court statement violates our hearsay rules however is a separate and distinct consideration from whether its introduction would violate the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (noting that out-of-court statements not within the scope of the Confrontation Clause nonetheless remain "subject to traditional limitations upon hearsay evidence.").

*Commonwealth*, 433 S.W.3d 309, 315 (Ky. 2014) ("[A] confrontation violation can only occur if the defendant is unable to cross-examine the declarant.").

Here, the recording of the 911 call included both out-of-court statements by Nicki and Nicki's repetition of out-of-court statements by Kaitlyn. However, Nicki and Kaitlyn both testified at trial and thus were available for cross-examination by Sanders.[7] Thus, even assuming without deciding that the out-of-court statements by Nicki and Kaitlyn were testimonial,[8] their introduction did not violate the Confrontation Clause.

Sanders also argues the recording of the 911 call was inadmissible hearsay. Sanders stated a timely objection to admission of the recording on hearsay grounds. As such, this allegation of error is preserved and we review the trial court's ruling for abuse of discretion. KRE 103(a)(1); *Mason*, 559 S.W.3d at 341.

---

[7] In his brief, Sanders also references Richard's statement in the background of the 911 call that Kaitlyn did not report the abuse earlier because Sanders said "he'd bust her ass." However Sanders offers no argument that the jury hearing that statement violated the Confrontation Clause or warrants reversal, and we therefore do not consider that issue.

[8] The Confrontation Clause does not bar admission of nontestimonial out-of-court statements. *Davis*, 547 U.S. at 821 (noting that a nontestimonial statement "is not subject to the Confrontation Clause"). It is certainly arguable the out-of-court statements were nontestimonial given that the evident purpose of Nicki's 911 call was to obtain police assistance following the emergency created by the fight between her family members and Sanders. *See id.* at 822-23 & n.2 (holding that statements to 911 operators are nontestimonial when made "under circumstances objectively indicating that the primary purpose . . . is to enable police assistance to meet an ongoing emergency."). We need not resolve whether the statements were nontestimonial however given our conclusion that no Confrontation Clause violation occurred in any event because Nicki and Kaitlyn were available for cross-examination at trial.

10

We conclude the recording of the 911 call was not hearsay. An out-of-court statement is hearsay and therefore inadmissible under KRE 802 only if it is "offered in evidence to prove the truth of the matter asserted." KRE 801(c). Thus, a statement offered for a purpose *other than* to prove the truth of the matter asserted is *not* hearsay. *Harris v. Commonwealth*, 384 S.W.3d 117, 125 (Ky. 2012) ("Only those [statements] that are offered to prove the truth of the matter asserted can be considered hearsay."); *Slaven v. Commonwealth*, 962 S.W.2d 845, 855 (Ky. 1997) (holding statement was not hearsay because it "was offered not to prove the truth of the matter asserted, but only to prove when the statement was made.").

Here, the trial court admitted the 911 call on the Commonwealth's motion after defense counsel questioned Nicki about the call and the fact that she first mentioned the fight and only thereafter mentioned Kaitlyn's rape allegation. The call thus was not admitted for the purpose of demonstrating either that Sanders had raped Kaitlyn or that Kaitlyn had told her mother Sanders had done so. Rather, the call was admitted to demonstrate the context of Nicki's reporting of that allegation to law enforcement. Thus, because the call was not admitted to prove the truth of the matter asserted but rather for another purpose, it was not hearsay.

We further note that even if the 911 call had been inadmissible hearsay, its admission would be at most harmless error. While Nicki said during the 911 call that Kaitlyn said Sanders had raped her, Kaitlyn herself testified to the same thing at trial. What Nicki said on the 911 call did not go into any further

11

detail and was merely cumulative of what Kaitlyn herself said at trial. There is thus no basis to conclude the result at trial was substantially swayed by the jury's hearing of the 911 call recording. In a similar vein, the 911 call also was not more prejudicial than probative given that the jury in any event heard Kaitlyn make the same statement at trial that Nicki referenced in the 911 call. As such, introduction of the 911 call recording at trial does not warrant reversal.

## IV. No prosecutorial misconduct occurred.

Finally, Sanders also argues he was denied a fair trial when the prosecutor engaged in prosecutorial misconduct during closing arguments. More particularly, Sanders notes that in closing arguments, the prosecutor referred to him as a "coward," stated he had engaged in "cowardly acts," and said he did not have the courage to tell the truth. Sanders also alleges error in a statement by the prosecutor that "[t]he presumption of innocence is gone because I believe the evidence shows beyond a reasonable doubt that he is guilty." Sanders contends error also occurred when, after reciting Dr. Liles' qualifications, the prosecutor told the jury if it wanted to believe the defense over Dr. Liles, "I don't know what to tell you." Finally, Sanders argues the prosecutor improperly vouched for Kaitlyn when he told the jury that minor differences in Kaitlyn's stories at CAC and at trial showed she was not coached, that she was consistent about the important details, and that she did not make up her story because a six-year-old was not going to make up the kind of story Kaitlyn told.

12

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.' It 'may result from a variety of acts, including improper questioning and improper closing argument.'" *Commonwealth v. McGorman*, 489 S.W.3d 731, 740 (Ky. 2016) (quoting *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011)) (citations omitted).

Though Sanders acknowledges his other allegations of prosecutorial misconduct are unpreserved, he asserts he preserved his argument that error occurred when the prosecutor referred to him as a "coward" during closing arguments. We disagree. Sanders immediately objected to the comment and the trial court sustained the objection. However, because Sanders did not thereafter request either an admonition or mistrial, he did not preserve the allegation of error for consideration here. *Leger v. Commonwealth*, 400 S.W.3d 745, 752 (Ky. 2013) (finding defendant's allegation of error as to prosecutor's comments during closing argument unpreserved "because '[m]erely voicing an objection, without a request for a mistrial or at least for an admonition, is not sufficient to establish error once the objection is sustained.'" (quoting *Hayes v. Commonwealth*, 698 S.W.2d 827, 829 (Ky. 1985))).

Because Sanders' remaining allegations of prosecutorial misconduct are unpreserved, we will reverse only if the conduct was both flagrant and constitutes palpable error resulting in manifest injustice. RCr 10.26; *Matheney*, 191 S.W.3d at 606, 607 n.4. To determine if the misconduct is flagrant, we consider "(1) whether the remarks tended to mislead the jury or to

13

prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010) (quoting *Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky. 2010)). Where, as here, a defendant alleges prosecutorial misconduct during closing arguments, we consider the "closing arguments 'as a whole' and keep in mind the wide latitude we allow parties during closing arguments." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 331 (Ky. 2016) (quoting *Miller v. Commonwealth*, 283 S.W.3d 690, 704 (Ky. 2009)).

We perceive no error in the prosecutor's statement that the "presumption of innocence" was gone given the context in which the statement was made. The prosecutor stated:

> There's a presumption of innocence which just means that he's presumed to be innocent unless you're satisfied by all the evidence—that the indictment is not any evidence—but if you're satisfied beyond a reasonable doubt by the evidence presented you will find him guilty. If not you will find him not guilty. In this case that presumption of innocence is gone because you've received the evidence and I believe that evidence shows beyond a reasonable doubt that he's guilty. But he is presumed innocent unless you're satisfied by the evidence and the evidence alone.

The prosecutor's statement that the "presumption of innocence was gone" was merely his statement of his belief that the evidence showed Sanders was guilty, which he followed with a summation of the evidence leading him to that conclusion. There is nothing improper in such argument. *Dickerson*, 485 S.W.3d at 332 ("[T]his Court has consistently held it is proper for prosecutors to express personal opinions about defendants' guilt that are based on the

14

evidence in the case."); *see also Shavers v. Commonwealth*, No. 2001-SC-0232-MR, 2003 WL 21990214, at *7 (Ky. Aug. 21, 2003) (finding no error in prosecutor closing argument statement that "it was time to 'strip [Appellant] of this presumption of innocence.'").

Sanders further contends prosecutorial misconduct occurred when the prosecutor told the jury "I don't know what to tell you" if they did not believe Dr. Liles' testimony. Again, we discern no error. Though Sanders contends this statement suggested defense counsel was misleading the jury and placed the burden of proof on Sanders, we fail to see any such implications in the statement. Moreover, the statement was made after defense counsel attacked the qualifications of Dr. Liles in her closing statement and thus was a proper response to that attack by the Commonwealth. *See Commonwealth v. Mitchell*, 165 S.W.3d 129, 132 (Ky. 2005) ("This Court has repeatedly held that a prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence, *as well as respond to matters raised by the defense.*") (emphasis added) (citation omitted).

Sanders' final argument is that the prosecutor impermissibly vouched for Kaitlyn's credibility when he stated in closing argument that 1) inconsistencies in Kaitlyn's story demonstrated she was not coached, 2) Kaitlyn was consistent as to the significant details, and 3) Kaitlyn was not making up her story and a six-year-old would not do so. Prosecutors "may not personally vouch for the credibility of a witness." *Towe v. Commonwealth*, 617 S.W.3d 355, 363 (Ky. 2021). "Improper vouching occurs when the prosecutor inserts the

15

prosecutor's own personal belief to shore up the credibility of a witness." *Id.* Such vouching may involve "either blunt comments, such as, 'I think [the witness] was candid. I think he is honest,' or comments that imply the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.'" *Id.* (quoting *Hall v. Commonwealth*, 551 S.W.3d 7, 18 (Ky. 2018)).

Notably, however, "a prosecutor may rebut any attack on the credibility of a witness made in the defense's closing arguments." *Id.* Here, the defense's closing argument spent considerable time attacking the credibility of Kaitlyn's allegations. Over the course of this ten-minute attack, defense counsel argued that Kaitlyn was "all over the place" and that her story was "nonsensical," inconsistent, and revealed the mind of a child making up a story as she went along. Defense counsel also suggested the details provided by Kaitlyn were not physically possible and that her story was motivated by her family's hatred of Sanders. Defense counsel further told the jury Kaitlyn had previously made another false sexual abuse allegation.

The prosecutor's closing argument appropriately responded to this line of argument and did not impermissibly extend into personal statements of belief in Kaitlyn's story or suggestions implying a special knowledge of the facts or of Kaitlyn's credibility. His statements that Kaitlyn was generally consistent and that any inconsistencies merely indicated a lack of coaching directly responded to the defense's contention that Kaitlyn was inconsistent. Similarly, his statements that Kaitlyn did not make up her story were directly responsive to

16

the defense's statements in closing argument that she did make up the story. Moreover, he premised his statement that Kaitlyn was not making up her story on the nature of her injury and her familiarity with facts she was unlikely to know absent sexual abuse. Thus, because the prosecutor did not personally express belief in Kaitlyn's allegations but rather appropriately responded to the defense's closing argument by pointing to inferences the jury should draw from the evidence, his closing argument was not prosecutorial misconduct. *See Lewis v. Commonwealth*, 475 S.W.3d 26, 39 (Ky. 2015) (finding no prosecutorial misconduct in closing argument statements in which "the Commonwealth's attorney did not state whether she personally believed or disbelieved any witness. She simply set forth inferences that the jury should draw from the evidence."). We therefore also conclude the prosecution's closing argument does not warrant reversal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Ohio Circuit Court.

All sitting. All concur.

17

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General