Paul LAMB, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee

2015–SC–000255–MR

Supreme Court of Kentucky.

FEBRUARY 16, 2017

COUNSEL FOR APPELLANT: Steven Jared Buck, Assistant Public Advocate

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, Micah Brandon Roberts, Assistant Attorney General

## OPINION OF THE COURT BY JUSTICE VENTERS

Appellant, Paul F. Lamb, appeals from a judgment of the McCracken Circuit Court convicting him of eleven crimes: 1) failure to or improper signal; 2) careless driving; 3) two counts of first degree trafficking in a controlled substance (Percocet), greater than ten dosage units, subsequent offense; 4) trafficking in marijuana, less than eight ounces, subsequent offense; 5) possession of drug paraphernalia; 6) trafficking in marijuana, greater than five pounds, firearm enhanced; 7) first degree trafficking in a controlled substance (Percocet), greater than ten dosage units, firearm enhanced; 8) first degree possession of a controlled substance (methamphetamine), firearm enhanced; 9) possession of drug paraphernalia, firearm enhanced; and 10)

possession of a handgun by a convicted felon. He was sentenced to prison for a total of seventy years. Appellant asserts on appeal that the trial court erred by 1) allowing him to waive counsel, 2) failing to suppress evidence from an illegal search, 3) allowing entry of improper character evidence, 4) denying a directed verdict, and 5) allowing Appellant's sentence to be enhanced as a subsequent offender. For the reasons stated below, we affirm Appellant's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant became the focus of an investigation after police received a complaint that illegal drugs were being sold from the house in which he resided. As part of this investigation, McCracken County Sheriff Department (MCSD) detectives used a confidential informant to buy Percocet from Appellant at a local bar. Five days later, the confidential informant told the detectives that Appellant was then at the same bar attempting to sell hydrocodone pills. Detectives surveilling the bar watched Appellant leave, get into his vehicle, and drive away. The detectives followed in an unmarked car. After seeing Appellant cross over the center line of the highway, they contacted the MCSD canine officer and informed him that they were following Appellant, that Appellant had previously sold illegal drugs to an informant, that the informant had told them that Appellant was in possession of hydrocodone which he had attempted to sell, and that Appellant could have a handgun.

The canine officer, in a marked police vehicle, then took over the task of following Appellant. When he saw Appellant make a right turn without using his turn signal, the officer stopped Appellant. As he approached Appellant's vehicle, he detected a faint odor of burnt marijuana. He

instructed Appellant to exit the vehicle; he then patted Appellant down for weapons. Although he did not detect a weapon, he felt what he believed to be a "bundle of drugs." Appellant passed a field sobriety test and the portable breath test did not detect alcohol beyond the legal limit. Appellant refused consent for a search of his vehicle and his person.

Ten minutes after stopping Appellant, and with Appellant standing away from his vehicle, the canine officer deployed his dog to search the exterior of the unoccupied vehicle. The dog alerted to the driver's door. The officer then searched inside the vehicle but found only a nine millimeter clip in the trunk. He then searched Appellant's person and found six doses of hydrocodone, 26 doses of Percocet, 39 grams of marijuana, and $2,480 cash, including $80 of the cash used by the confidential informant for the Percocet purchase five days earlier. Appellant was arrested. Additional charges followed when a search of Appellant's residence led to the discovery of other contraband.

## II. ANALYSIS

### A. The Trial Court Properly Determined that Appellant Had Waived His Right to Counsel

■ Two months after being appointed counsel, Appellant moved the court to relieve his counsel of further duty and allow him to represent himself. After conducting a *Faretta* hearing,[1] the trial court concluded that Appellant voluntarily, knowingly, and intelligently waived his right to counsel. The court granted Appellant's motion to act as his own counsel and directed his appointed attorney to act as standby counsel.

In *Commonwealth v. Terry*, 295 S.W.3d 819, 822 (Ky. 2009), this Court offered model questions that trial judges could use to assist them in determining whether waivers of the right to counsel were being knowingly and intelligently made. Appellant complains that the trial judge in this case did not use *Terry's* model questions. In particular, he complains that the trial court did not review with him the crimes charged and their associated penalty ranges; did not discuss the procedure to be employed if he chose to testify; and failed to advise him against self-representation. Consequently, Appellant asserts that he was left without a proper appreciation of the disadvantages of self-representation, and thus he did not knowingly, voluntarily, and intelligently waive his right to counsel.

■ The Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution provide the right of self-representation for defendants who knowingly and intelligently relinquish their right to professional legal counsel. *Faretta* holds:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits.... [The accused] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

422 U.S. at 835, 95 S.Ct. 2525 (internal citation and quotation marks omitted).

The Supreme Court explained in *Faretta* that a defendant choosing self-representation "should be made aware of the dangers

1. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

and disadvantages of self-representation" but that he need not have "the skill and experience of a lawyer in order competently and intelligently to choose self-representation," and "technical legal knowledge ... was not relevant to an assessment of [one's] knowing exercise of the right to defend himself." The Supreme Court further noted that "[t]he trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel." *Id.* at 835-836, 95 S.Ct. 2525. However, it appears in *Faretta* that an extensive discussion of the dangers associated with self-representation was not undertaken.

 *Faretta* does not specifically require the trial court to inform a defendant seeking self-representation of the charges against him, the possible penalties, or the procedures that may be pertinent to the defense of his case. Nor must the defendant be specifically warned against self-representation. As we have stated in other cases, the inquiry to determine if a particular defendant is making an intelligent waiver of counsel and adequately understands the potentially adverse consequences of his choice, must be adapted to the circumstances of the individual case. The inquiry will depend on case-specific factors, such as the defendant's education, experiences, sophistication, the complexity or simplicity of the charges, and the stage of the proceeding for which the defendant seeks to waive counsel. *Depp v. Commonwealth*, 278 S.W.3d 615, 617 (Ky. 2009) (quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004)); *Terry*, 295 S.W.3d at 825, n. 3. "[T]he requirement remains that a trial court must provide a defendant proposing self-representation enough information to demonstrate that the defendant's waiver of counsel was done with 'eyes open.'" *Terry*, 295 S.W.3d at 820. Ultimately, the trial

court must ascertain that the defendant is competent to waive his right to counsel, not that the defendant is competent to represent himself. *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

Consequently, the trial judge in this case was not required to impart specific knowledge or warnings to Appellant as a prerequisite for finding that he knowingly and intelligently waived his right to counsel. Rather, it was sufficient that Appellant was alerted generally to the difficulties of navigating the trial procedure *pro se.* Upon review, we are satisfied that the trial court adequately cautioned Appellant so that he had an appropriate understanding of the dangers of self-representation. The question is not how well the trial court employed the model questions offered as guidance in *Terry*, but whether the trial court provided enough information to assure that Appellant's waiver of counsel was done with "eyes open." *See Grady v. Commonwealth*, 325 S.W.3d 333, 342 (Ky. 2010); *Terry*, 295 S.W.3d at 825. As in *Faretta*, "the record affirmatively shows that [Appellant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will" when he elected to represent himself. 422 U.S. at 835, 95 S.Ct. 2525. The trial court did not err by allowing Appellant to waive counsel.

**B. The Trial Court Properly Declined to Suppress Evidence Obtained as a Result of the Search of Appellant's Person**

The trial court denied Appellant's motion to suppress evidence obtained after the warrantless stop of his vehicle, and after the seizure and subsequent search of his person. Appellant does not dispute the trial court's findings of fact, but asserts

the trial court erred in its application of law.

The trial court concluded that: 1) the arresting officer had probable cause to stop Appellant's vehicle after he failed to use a turn signal in violation of KRS 189.380(1);[2] and 2) the officer executed the subsequent sobriety test, drug dog search, and pat-down search based upon the information he received from the detectives. The trial court concluded that once the canine alerted to Appellant's driver's side door, the officer had probable cause to search Appellant's vehicle and person pursuant to *Morton v. Commonwealth*, 232 S.W.3d 566 (Ky. App. 2007), and the automobile exception to the constitutional warrant requirement.

■ We review a trial court's ruling on a motion to suppress by examining whether the trial court's findings of fact are supported by substantial evidence and if those factual findings are not clearly erroneous, by then conducting a de novo review of the trial court's application of the law to the facts. *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016) (citations omitted). Since neither party challenges the trial court's findings of fact, we turn our attention to its application of the law.

■ The initial traffic stop and pat-down search are not challenged, and we see no error associated with these police actions. The question is whether the second search of Appellant, the search of his person that followed the drug dog's alert on the vehicle, was lawful. Appellant contends that even if the initial stop of the vehicle was justified, the officer nevertheless improperly detained him for a second search of his person even after he had passed the sobriety tests and after the

search of his vehicle had yielded no evidence of criminal activity. In support of his argument Appellant further cites the officer's suppression hearing testimony that he conducted the second frisk of Appellant's person out of concern that Appellant might have a firearm, even though the officer had already patted him down for that purpose during the initial stages of the stop.

However, as further explained below, with the higher, probable cause standard having already been met for the initial stop, and ultimately for the felony arrest of Appellant for drug trafficking, the second search of Appellant was a permissible warrantless search incident to arrest, and so it is unnecessary to perform an analysis from the perspective that the stop was an investigatory stop, allowed under the lower, articulable reasonable suspicion standard. *Southern Financial Life Insurance Company v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013) (citation omitted) ("[I]t is well settled that we are not bound by the analysis of the [lower court] and may affirm on any grounds supported by the record.").

■ In any event, the officer's subjective intention is irrelevant here; subjective intentions do not play a role in either a probable cause or a reasonable suspicion analysis under the Fourth Amendment. "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). We accordingly reject Appel-

**2.** KRS 189.380(1) provides: "A person shall not turn a vehicle or move right or left upon a roadway until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided."

lant's argument insofar as it is premised upon some defect in the officer's subjective intentions; at all stages of the stop the officer's actions were objectively reasonable.

Appellant further argues the point that the challenged search arose solely from the traffic stop and was, thus, impermissible under *Davis v. Commonwealth*, 484 S.W.3d 288 (Ky. 2016) (holding that the officer inappropriately extended a traffic stop beyond its original purpose, determining the driver's sobriety, to perform a search). But that is not what happened here. Probable cause for the Appellant's drug trafficking arrest preceded the reason for the traffic stop. If we consider only the facts known to the officer before the second search of Appellant's person, it is clear that probable cause existed to justify Appellant's arrest for illegally trafficking in controlled substances.

The traffic violation certainly provided probable cause to authorize the initial stop, however the officer was also authorized to stop Appellant for the purpose of arresting him for drug trafficking entirely separate and apart from the turn signal violation. The record plainly discloses that the arresting officer was already aware of Appellant's involvement in the previous Percocet transaction and that Appellant had just left a nearby bar with hydrocodone to sell. That information provided probable cause for Appellant's arrest notwithstanding the traffic stop and his apparent sobriety.

■ KRS 431.005(1)(c) provides that an officer may make an arrest without a warrant when he has probable cause to believe that the person being arrested has committed a felony. To establish probable cause, the prosecution must show that "at the moment the arrest was made ... the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Williams v. Commonwealth*, 147 S.W.3d 1, 12 (Ky. 2004) (quoting *Beck v. Ohio*. 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

■ The knowledge upon which the arresting officer bases probable cause to arrest need not be derived exclusively from his own personal observations. Under the collective knowledge doctrine, an arresting officer is entitled to act on the strength of the knowledge communicated from a fellow officer and he may assume its reliability provided he is not otherwise aware of circumstances sufficient to materially impeach the information received. *See United States v. Hensley*, 469 U.S. 221, 232-233, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (Under the collective knowledge doctrine, when law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers); *Darden v. Commonwealth*, 298 S.W.2d 687, 689 (Ky. 1957) ("The necessary elements [of probable cause to arrest] are that the officer acts upon a belief in the person's guilt, based either upon facts or circumstances within the officer's own knowledge or upon information imparted to him by reliable and credible third persons, provided there are no circumstances known to the officer sufficient to impeach materially the information received." (citations omitted)).

■ The trial court's undisputed findings of fact which detailed the investigative efforts that revealed Appellant's illegal drug trafficking, and the aspects of that information which were relayed to the officer who arrested Appellant, clearly establish that the officer had probable cause to arrest Appellant on the drug charges at the time he stopped the vehicle. Once authorized to make a lawful arrest, the officer was justified in conducting a substantially-contemporaneous warrantless search

of the arrestee, and it makes no difference that the formal arrest was subsequent to the search incident to that arrest. *Williams*, 147 S.W.3d at 8 (citing *State v. Overby*, 590 N.W.2d 703 (N.D. 1999)); *see Rawlings v. Commonwealth*, 581 S.W.2d 348, 350 (Ky. 1979), *aff'd, Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) ("[T]he police clearly had probable cause to place petitioner under arrest. Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). A search incident to lawful arrest is justified by "the need to disarm the suspect in order to take him into custody [and] on the need to preserve evidence on his person for later use at trial." *Robinson*, 414 U.S. at 234, 94 S.Ct. 467. When one is searched incident to arrest, a warrant is not required, and an officer is permitted to search the person arrested. *McCloud v Commonwealth*, 286 S.W.3d 780, 785 (Ky. 2009) (citing *Chimel v. California*, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

We are satisfied that the arresting officer's second search of Appellant's person was conducted lawfully; Appellant's right against unreasonable searches of his person was not violated. We affirm the trial court's denial of Appellant's motion to suppress the fruits of that search.

## C. Entry of Evidence that the Confidential Informant's Work Resulted in Convictions in Other Cases Was Not Palpable Error

■ Two detectives testified at Appellant's trial about the confidential informant's experience as an informant, including his work on cases in which the defendants had pled guilty. Citing *Fairrow v. Commonwealth*, 175 S.W.3d 601 (Ky. 2005), Appellant argues that this reference to the informant's work on other cases was improper character evidence to bolster the informant's credibility and to imply that Appellant was also guilty. Appellant contends that the Commonwealth relied heavily on the informant's testimony to prove Appellant was guilty of first degree trafficking in a controlled substance, greater than or equal to ten dosage units of Percocet, based upon his alleged transaction with the informant.

Because the issue was not preserved at trial, Appellant seeks palpable error review under RCr 10.26.[3] In *Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014), we articulated this exacting standard for correcting palpable error on appeal under RCr 10.26:

For error to be palpable, "it must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). The rule's requirement of manifest injustice requires "showing ... [a] probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). Or, as stated differently, a palpable error is where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4. Ultimately, "[m]anifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the pro-

---

**3.** As provided in RCr 10.26, "[a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

ceeding." *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (quoting *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012)).

We first note that if the cited testimony was error at all, it was not so readily apparent, or "easily perceptible" as to qualify as "palpable." Implicit in the concept of palpable error correction is that the error is so obvious that the trial court was remiss in failing to act upon it *sua sponte*.

Secondly, references to the informant's previous successes could not have so unduly enhanced the informant's credibility that it influenced the result of the trial or jeopardized Appellant's due process rights. Regardless of the informant's previous performance, his credibility in this instance was substantially documented. The jury heard testimony from the informant and the detectives detailing the controlled buy from start to finish. The detectives made sure that the informant had no contraband when he entered the bar with five specifically identifiable $20 bills to buy Percocet from Appellant. The informant returned with ten Percocet pills and only one of the $20 bills. When arrested, Appellant had on his person four of the $20 bills police had provided to the informant for use in the drug buy.

There is no substantial probability that the outcome of the case would have been different if the trial court had intervened *sua sponte* to reject the portion of the testimony at issue. Appellant's substantial rights were not affected by the testimony. Consequently, he is not entitled to relief under RCr 10.26.

## D. Appellant Was Not Entitled to a Directed Verdict

At the close of the Commonwealth's case, Appellant moved for a directed verdict on the charge of first degree trafficking in a controlled substance. He asserted that the video recording of the controlled buy in which Appellant allegedly sold ten Percocet pills to the informant did not depict a drug transaction. The motion was denied.

When deciding a motion for a directed verdict "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Questions about the credibility and weight to be given to the evidence are reserved to the jury. *Id.* "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

Appellant now reiterates his claim that the video failed to document that a drug transaction occurred and that the informant's testimony is the only evidence of Appellant's guilt. Based upon that evidence, it would not be clearly unreasonable for a jury to find Appellant guilty of first degree trafficking in a controlled substance. The trial court did not err when overruling Appellant's motion for a directed verdict.

## E. KRS 218A.010(41) Is Not an Unconstitutional Sentencing Enhancement

Prior to trial, by way of a motion for declaratory judgment, Appellant challenged the constitutionality of KRS 218A.010(41) because it enhances subsequent convictions for drug trafficking no

matter how far in time they are removed from the defendant's previous conviction. The trial court rejected his argument.

Appellant was convicted in 1985 of trafficking in marijuana over eight ounces and trafficking in schedule II non-narcotic controlled substances. In the instant case, the jury found Appellant guilty of two counts of first degree trafficking in a controlled substance, greater than or equal to ten dosage units of Percocet, and one count of trafficking in marijuana, less than eight ounces, as a subsequent offender under KRS 218A.010(41).[4] KRS 218A.010(41) states:

> [A]n offense is considered as a second or subsequent offense, if, prior to his or her conviction of the offense, the offender has at any time been convicted under this chapter, or under any statute of the United States, or of any state relating to substances classified as controlled substances . . . .

The jury recommended sentences of 15 years and 10 years pursuant to KRS 218A.1412(3)(a),[5] respectively, for the two first degree trafficking charges and a sentence of 5 years pursuant to KRS 218A.1421(2)[6] for the trafficking in marijuana charge. As he asserted in his pretrial motion, Appellant argues that the sentence enhancements for these drug trafficking charges under KRS 218A are unconstitutional. He complains that his due process rights were violated because KRS 218A.010(41) does not limit the time for which a prior offense can be used to enhance the punishment for a later offense.

Appellant points out that other sentencing enhancements for subsequent offenses impose a time limitation beyond which any subsequent offenses must be treated as a first offense. As examples, he cites KRS 532.080 (persistent felony offenders), KRS 189A.010 (driving under the influence), and KRS 533.010(4) (limiting for probation purposes to ten years the time span for which a prior crime may signify the "likelihood" that a defendant will commit another crime).

Although Appellant views KRS 218A.010(41) as fundamentally unfair, "the substantive power to prescribe crimes and determine punishments is vested with the legislature." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 39 (Ky. 2011) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984)); *Gore v. United States*, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). The legislature may, as it deems proper, impose restrictions on the remoteness of prior offenses for the purposes of enhanced sentencing. Or, it may choose to punish second or subsequent offenses more harshly than first offenses regardless of the age of the prior offense. We see no constitutional barrier to this legislative prerogative.

We are not persuaded that KRS 218A.010(41) is unconstitutional because it enhances the punishment of second offenses regardless of when the prior offense occurred, even if other statutory regimens

---

4. Effective April 27, 2016, KRS 218A.010(42) contains the definition of second or subsequent offense.

5. KRS 218A.1412(3)(a) provides that any person who commits first degree trafficking in a controlled substance by trafficking in 10 or more dosage units of a controlled substance that is classified in Schedules I or II and is a narcotic drug, or a controlled substance analogue, shall be guilty of a Class C felony for the first offense and a Class B felony for a second or subsequent offense.

6. KRS 218A.1421(2) provides that trafficking in less than 8 ounces of marijuana is a Class A misdemeanor for a first offense and a Class D felony for a second or subsequent offense.

do take into account the age of the prior convictions. We honor a presumption that a statute is constitutional "unless its violation of the constitution is clear, complete and unequivocal." *Cornelison v. Commonwealth,* 52 S.W.3d 570, 572 (Ky. 2001) (citations omitted). The party challenging the statute bears the burden of showing the constitutional violation. *Id.* at 572-573. Appellant has not met that burden. The trial court did not err by denying Appellant's motion for declaratory judgment and allowing the Commonwealth to introduce Appellant's prior trafficking convictions for sentence enhancements of his current trafficking convictions.

## III. CONCLUSION

For the foregoing reasons, Appellant's conviction is affirmed.

All sitting. All concur.