# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0045-MR

JAMES LANG                                               APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BARRY WILLETT, JUDGE
NOS. 12-CR-003313 AND 17-CR-001135

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Appellant James Lang, a parolee indicted for the offense of second-degree escape, opted for a bench trial for both the guilt and penalty phases of his trial. He was convicted as charged and sentenced to twenty years in prison, his five-year escape sentence being enhanced due to his status as a persistent felony offender in the first degree (PFO I). Lang brings three issues on appeal. He argues that (1) because he acted as his own counsel during his trial without having had a *Faretta*[1] hearing, reversal is required; (2) the second-degree escape charge should have been dismissed because it was based upon the Department of Corrections' (DOC) inaccurate sentence time-credit calculations; and (3) the trial court sentenced him in abstentia in violation of the Due

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

Process provisions of the Kentucky and U.S. Constitutions. For the reasons stated below, we affirm the Jefferson Circuit Court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Lang was staying at Dismas Charities House (Dismas), a DOC community facility,[2] in Louisville in 2012 as a state inmate. On August 8, 2012, he left for work but never reported to work or back to Dismas. Lang was arrested September 25, 2012 and indicted by a Jefferson County grand jury on October 25, 2012 for committing the offense of second-degree escape.[3] He was later indicted in 2017 for being a PFO I.

A bench trial was held in May 2017. The Commonwealth called five witnesses. Lang, along with his attorney, cross-examined the DOC Offender Information Administrator (OIA). Lang testified on his own behalf and did not call any other witnesses. The trial judge found Lang guilty of second-degree escape, and at a subsequent penalty phase bench trial, found Lang to be a PFO I. He was sentenced December 3, 2018 to prison for twenty years, an enhancement of his five-year sentence for committing escape in the second degree.

The claims Lang raises on appeal are addressed in turn.

---

[2] Dismas Charities was referred to as a "halfway house" during Lang's trial.

[3] "A person is guilty of escape in the second degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody." Kentucky Revised Statute (KRS) 520.030(1). "Escape in the second degree is a Class D felony." KRS 520.030(2).

## ANALYSIS

### I. *Faretta* Hearing

Lang's first claim is that the trial court committed error by failing to conduct a *Faretta* hearing before allowing Lang to function as hybrid counsel. Because this issue is unpreserved, Lang requests Kentucky Rule of Criminal Procedure (RCr) 10.26 palpable error review.[4]

Lang filed his written *pro se* motion to be designated as co-counsel pursuant to Section 11 of the Kentucky Constitution. Viewing Kentucky's Constitution as guaranteeing a criminal defendant the right to be heard by both counsel and by himself, Lang disagreed with Kentucky precedent that requires a *Faretta* hearing in hybrid counsel situations. Lang requested that the trial court simply designate him as co-counsel. Otherwise, he requested the trial court hold a *Faretta* hearing to determine exactly his and his counsel's obligations with respect to representation.

Lang's motion was considered during a pretrial conference held three months before his trial. Lang's counsel began, describing Lang acting recently as co-counsel in another division of Jefferson Circuit Court.[5]

---

[4] RCr 10.26 states:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

[5] Fillers and repetitions are omitted from the transcription.

Counsel: Your Honor, Mr. Lang served as his own counsel in Division 11 . . . last week.[6] He conducted cross examination of all the Commonwealth's witnesses, filed some motions on his own, asked but was not allowed to do the opening and closing. So what I did was objections, some motions, and opening and closing statements, and tendered instructions. Mr. Lang, I don't know how much you have seen of his legal filings, but it's one where I think he wants to move forward and it's a very important matter to him to exercise his individual rights to represent himself but with the assistance of counsel.

Lang: Yes, sir.

Court: Why would you want to do that?

Lang: Previously, I was, from my experience, I wasn't, I had to get conflict counsel[7] because the Public Defender's Office just was hosing me basically. They weren't talking to me, they weren't doing nothing. And I wanted to protect myself. That has subsequently changed somewhat. And I believe, I just, like I said would prefer to be in a position where if I felt things were going south to be able to file a motion or address the court.

Court: Okay. My experience with criminal defendants representing themselves in Circuit Court has not been good.

Lang: Yes, sir.

Court: The last individual that represented himself, I have to stop and remember, he turned down 10 years . . .15 years and ended up getting 45. Particularly in light of the fact that the lawyer sitting next to you is very competent. He's very good at what he does. You know you have a constitutional right to represent yourself if you want to, but my analogy is, it's a lot like needing surgery, would you ever dream of performing surgery on yourself.

---

[6] Lang's agreement that it was "last week" is omitted.

[7] The attorney representing Lang at this point is appointed conflict counsel.

Lang:       No.

Court:      No.

Lang:       I understand Your Honor.  And actually I'm in a
            position now where I think [counsel] and I have an
            understanding, if I could go ahead and waive the
            *Faretta* request.

Court:      Well, I don't want you to think I'm trying to push you
            into doing that.  It's your decision.

Lang:       That sounds fine.

Court:      Okay, is that what you want to do today, you want to
            waive?

Lang:       Yes, sir.  (Answering contemporaneously with the
            court's question.)

Court:      You want to waive?  Okay.  All right.  And if you
            change your mind you can always re-motion.

The morning of trial, Lang requested a bench trial.  At that time, he himself explained his defense on the escape charge was "really technical [and] it involve[d] a determination of what [his] actual sentence length was according to statute and precedent and whether or not [he] was eligible for parole supervision credit during the period of time [he] was on parole."  Being unsure of the jury's capabilities and considering the motion *in limine* he would need to make, to save the Commonwealth and himself time and effort, he stated he preferred a bench trial.

Lang's attorney began the discussion of Lang being allowed to address the court during the bench trial.

Counsel:    And Your Honor, with regard to Mr. Lang addressing
            the court, I would like to say that he did have a *Faretta*
            motion pending for some time when he actually had

5

| | |
|---|---|
| | [different counsel] from the Public Defender on his case, is my recollection. Up until . . . . |
| Court: | I thought we resolved that. |
| Counsel: | We did Your Honor. And the only reason why I bring that up Your Honor is he has been an active litigant in the indictments that are pending in the Jefferson Circuit Court. He was just sentenced this morning in Judge Edwards' court on a matter in which he was his own counsel. And so to the extent his addressing the court would appear unusual on tape, it is one where Mr. Lang is situated to where I think that he wants to address the court when he feels that I am inadequate, and he will feel that way during trial, such as he has in the past. So, I wanted to clarify for the record while he is not his own counsel he does want to make arguments here and there. Correct? |
| Lang: | Yeah. Yes, sir. |
| Court: | And if we proceed in a bench trial, that's far easier to accommodate. |
| Counsel: | And I bring that up Your Honor because it's such an extraordinary situation to have a defendant who brings up the issue and wishes to waive a Seventh Amendment right to a jury trial. |

The Commonwealth called five witnesses, one of which was a DOC OIA. After Lang's attorney cross-examined the OIA, Lang cross-examined her, his questions dealing with the "technical" aspects of his defense. Lang's defense was that the DOC miscalculated his serve-out date, but he was unsuccessful in getting relief through the DOC, and at the time he left Dismas, he had completed his sentence and he was no longer subject to the DOC's jurisdiction. Lang's cross-examination of the OIA focused on his Resident Record Card, his actual sentence length and parole supervision credit, citing House Bills,

statutes and caselaw. Lang's attorney assisted throughout the examination, including helping Lang frame questions, addressing the Commonwealth's objections, moving to enter exhibits, asking leeway for Lang's introduction of documents into evidence not previously provided to the Commonwealth in discovery, and moving to enter exhibits by avowal.[8] At the penalty phase, Lang conducted the cross-examination of the prosecution's one witness.[9] Lang describes his counsel's role in a minimalistic manner and argues that because he acted as counsel for the bulk of the trial and the PFO/penalty phase, a *Faretta* hearing should have been held.

"In all criminal prosecutions the accused has the right to be heard by himself and counsel . . . ." Ky. Const. § 11. With the Kentucky Constitution guaranteeing the right to hybrid counsel, "an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services)." *Wake v.*

---

[8] Lang also interacted with his counsel when counsel addressed the trial court.

[9] By the time of Lang's penalty phase in this case, his appeal to this Court from the jury conviction for first-degree robbery in Jefferson Circuit Court Division 11 was decided. *See Lang v. Commonwealth*, 556 S.W.3d 584 (Ky. 2018). The first-degree robbery conviction was reversed. *Id.* at 586. On remand, because the issue was likely to present itself again at retrial, with Lang acting as co-counsel, the trial court was instructed to reconsider its denial of Lang's request to make his own opening statement and closing argument to the jury at trial. *Id.* This decision, and Lang's role as co-counsel during that trial, was discussed when Lang's attorney explained to the trial court that Lang desired to question the Commonwealth's witness. The trial court allowed Lang to proceed.

*Barker*, 514 S.W.2d 692, 696 (Ky. 1974).[10] With wide latitude given "to the defendant in choosing the extent to which he wishes to act as his own counsel, there are countless variations on how the duties of the defense will be divided between a defendant and his hybrid counsel." *Nunn v. Commonwealth*, 461 S.W.3d 741, 750 (Ky. 2015). However, before a defendant's request for a limited waiver of counsel is granted, the trial court must warn the defendant of the dangers of self-representation, and the defendant must voluntarily and intelligently elect to conduct his own defense. *Grady v. Commonwealth*, 325 S.W.3d 333, 343 (Ky. 2010).

While acknowledging the *Faretta* determination must not follow a rigid structure, like the defendant in *Lamb v. Commonwealth*, 510 S.W.3d 316, 320 (Ky. 2017), Lang complains that the trial judge did not use any of the model questions offered in *Commonwealth v. Terry*, 295 S.W.3d 819, 822 (Ky. 2009), to assist in the determination that his waiver of counsel was being knowingly and intelligently made. Lang further complains there was no colloquy at all regarding whether he should be permitted to participate to the extent he did or in which he was warned of the need to follow procedural rules. He asserts that without this questioning, the trial court failed to hold a *Faretta* hearing.

*Faretta* states:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently

---

[10] *Wake* also notes that the trial court may exercise its authority and limit the defendant's self-representation to maintain an orderly court. *Id.* at 697.

8

forgo those relinquished benefits . . . .  [The accused] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

422 U.S. at 835 (internal citation and quotation marks omitted).

As the preceding transcription discloses and the Commonwealth emphasizes, before beginning the trial, the trial court was aware that Lang had represented himself in another case in Jefferson Circuit Court (information related to *Terry*'s model questions).  And Lang's counsel made clear that his client was seeking to act only as hybrid counsel, desiring "to make arguments here and there," and Lang agreed.  Like in *Faretta*, the record affirmatively shows that Lang "was literate, competent, and understanding, and that he was voluntarily exercising his informed free will."  422 U.S. at 835.  Although the trial judge did not warn Lang that he would be required to follow the procedural rules, the trial judge had warned Lang (consistent with the *Terry* model questions) that he thought it was a mistake not to fully accept the assistance of counsel.  Lang expressly stated he understood that warning.  As explained in our prior cases and again in *Lamb*,

> [T]he inquiry to determine if a particular defendant is making an intelligent waiver of counsel and adequately understands the potentially adverse consequences of his choice, must be adapted to the circumstances of the individual case.  The inquiry will depend on case-specific factors, such as the defendant's education, experiences, sophistication, the complexity or simplicity of the charges, and the stage of the proceeding for which the defendant seeks to waive counsel.

9

510 S.W.3d at 321 (citing *Depp v. Commonwealth*, 278 S.W.3d 615, 617 (Ky. 2009) (quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004)); *Terry*, 295 S.W.3d at 825, n.3).

The defendant "must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta*, 422 U.S. at 834 (citation omitted). Upon review of the record, it is clear that the trial court met *Faretta*'s requirement of providing Lang with enough information to demonstrate that Lang's limited waiver of counsel was done with "eyes open." *See Grady*, 325 S.W.3d at 342; *Depp*, 278 S.W.3d at 618; *accord Terry*, 295 S.W.3d at 820. Lang, after being sufficiently warned of self-representation, but knowing his own best interests, exercised his right to cross-examine two of the Commonwealth's witnesses.[11] *Faretta*, 422 U.S. at 835 (citation omitted). The trial court did not commit palpable error.

## II. Directed Verdict

Lang's counsel moved for a directed verdict at the close of the Commonwealth's case. The motion was denied. On appeal, Lang argues that the second-degree escape charge should have been dismissed. Citing *R.S. v. Commonwealth*, 423 S.W.3d 178, 184 (Ky. 2014), Lang asserts, and the Commonwealth does not dispute, that his motion for a directed verdict,

---

[11] Lang later testified at trial that he had spent most of his adult life in prison and during his incarceration was assigned as a legal aide.

presented at a bench trial, should be treated as a motion for dismissal under Kentucky Rule of Civil Procedure (CR) 41.02(2).[12]  As explained in *R.S.*, the trial court approaches the motion to dismiss at a bench trial differently than a motion for a directed verdict at a jury trial.  The trial court must weigh and evaluate the evidence rather than indulging every inference in the Commonwealth's favor.  *Id.* (citation omitted).  When reviewing the trial court's ruling on a CR 41.02 motion, we determine whether the trial court abused its discretion.  *Id.* (citation omitted).  An abuse of discretion occurs when the trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Under CR 41.02(2), Lang's argument is that the Commonwealth, under the facts and law, failed to prove he committed second-degree escape.  Lang believes that the proof showed that he did not escape from Dismas because the DOC did not properly apply sentence credit for the various times Lang was on parole, and his sentence expired prior to the alleged escape on August 8, 2012.  He argues particularly that the DOC did not properly provide him sentence

---

[12] CR 41.02(2) states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.  The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.  If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52.01.

credit for the eligible time he spent on parole prior to and during the effective dates of Kentucky House Bill (H.B.) 406.

H.B. 406, the Commonwealth's biennial budget for the fiscal year beginning July 1, 2008, and ending June 30, 2009, and for the fiscal year beginning July 1, 2009, and ending June 30, 2010, was signed by the Governor on April 18, 2008. 2008 Ky. Acts ch. 127. In contrast to then-existing KRS 439.344 which did not allow time on parole to count toward a prisoner's maximum sentence, H.B. 406 allowed time spent on parole to count toward a prisoner's unexpired sentence when a condition was satisfied—the parolee could not have been returned to prison as a parole violator because of a new felony conviction. *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 158-59 (Ky. 2009). In *Conway*, the Attorney General challenged the DOC's application of H.B. 406 to time spent on parole before H.B. 406's effective date. This Court upheld the DOC's retroactive application of H.B. 406. *Id.* at 169-70.

Lang was on parole when H.B. 406 was enacted. His period of parole encompassing that time was December 13, 2007 to August 10, 2010. He was returned to prison in August 2010 for a technical violation. Lang had knowledge of H.B. 406 once it was passed by the General Assembly and made inquiries how under H.B. 406 his time on parole over twenty years impacted his unexpired sentence length. According to his testimony, he sent the DOC letters about its interpretation of H.B. 406, the letters being sent before and after H.B. 406's effective date. He further testified that the DOC provided

12

different interpretations. One interpretation by his parole officer was that it only applied to prisoners, while he nevertheless interacted with other parolees who had been given their final discharges. He also testified that another interpretation was that the credit was given to those who violate parole, yet despite his violation of parole in 2010, he did not receive the credit.

In 2011 Lang challenged the DOC's decision that he was not eligible for additional sentence credit under KRS 439.344. *Lang v. Thompson*, 2012-CA-000018-MR, 2013 WL 3480316, at *2 (July 12, 2013). The letter from the DOC to Lang declining additional credit stated:

> Unlike House Bill 406, KRS 439.344 is not retroactive. Parole Violators having a final parole revocation hearing on or after June 25, 2009 . . . will receive credit for the current period of parole supervision only. You were a return parole violator on 8/10/2010 after H.B. 406 which was retroactive was expired and replaced by H.B. 372.

*Id.* at *3. H.B. 372, 2009 Ky. Acts ch. 57, amended KRS 439.344 effective June 25, 2009, to allow parole supervision credit as long as the parolee was not (1) being returned to prison as a parole violator for a new felony conviction, (2) classified as a violent offender under KRS 439.3401, or (3) a registered sex offender pursuant to KRS 17.500 to 17.580.[13] Lang testified he was given parole supervision credit from June 25, 2009 to August 10, 2010. The Kentucky Court of Appeals affirmed the DOC's conclusion that H.B. 372 was not to be applied retroactively, reasoning the General Assembly had not

---

[13] KRS 439.344 was amended again in 2010, 2010 Ky. Acts ch. 107, adding four other exceptions effective April 12, 2010, but has not since been amended.

expressly declared its retroactive application. *Lang,* 2013 WL 3480316, at *4. At trial, Lang asserted that the Court of Appeals' opinion did not address his argument that he was entitled to additional parole supervision credit through H.B. 406's retroactive application.

Upon review of H.B. 406 and H.B. 372, we cannot agree that Lang is due additional credit under H.B. 406, as argued in his brief, for May 14, 1992 to June 4, 1993, April 2, 1997 to January 22, 1998, January 24, 2002 to October 31, 2002, or December 13, 2007 to August 10, 2010. H.B. 372 Section 2 amended KRS 439.344. H.B. 372 Section 5 states that "The provisions of Sections 1, 2, and 3 of this Act shall control over any contrary, more expansive, or more permissive provision of 2008 Ky. Acts ch. 127." Even if H.B. 372 Section 5 did not impact the retroactivity of H.B. 406, H.B. 406 cannot otherwise be found applicable to Lang's circumstances. Being a budget bill, H.B. 406's provisions were temporary and did not extend beyond the period prescribed in KRS 48.310.[14] With H.B. 406 being enacted in 2008, an even-numbered year regular session, its provision would not extend beyond June 30, 2010. Because Lang was not a parolee who had been returned to prison

---

[14] KRS 48.310 states:

(1) No provision of a branch budget bill shall be effective beyond the second fiscal year from the date of its enactment. A budget bill enacted at a special session or in an odd-numbered-year regular session of the General Assembly shall not be effective past July 1 of the year in which the next even-numbered-year regular session takes place.

(2) A budget bill may contain language which exempts the budget bill or any appropriation or the use thereof from the operation of a statute for the effective period of the budget bill.

for a technical violation of parole during that time, H.B. 406 does not apply to him.  As the DOC had previously written to Lang, H.B. 406 had expired before Lang's return to the DOC as a parole violator.  As a matter of fact and law, Lang was under the DOC's jurisdiction on August 8, 2012.  The trial court did not abuse its discretion by denying dismissal of Lang's case.

### III. Sentence Imposition

The PFO/penalty phase of the case was held October 19, 2018.  Again, Lang waived his right to a jury.  The Commonwealth requested the maximum twenty-year sentence and Lang requested the minimum ten-year sentence. The trial court asked the Commonwealth to prepare a proposed judgment for its consideration.  A few weeks later, without Lang's presence and apparently without notice otherwise, the trial court entered its judgment imposing the twenty-year sentence.[15]  Lang argues that the trial court sentenced him in abstentia, violating his due process rights and RCr 8.28.  He requests palpable error review.

The presence of the defendant is generally recognized as affording the defendant the opportunity to speak on his own behalf and to appeal to the trial court's discretion when imposing sentence by offering mitigating factors, an explanation of his conduct, or other factual and relevant information favorable to his position.  *See United States v. Behrens*, 375 U.S. 162, 165 (1963); *Green*

---

[15] Following the entry of judgment on December 3, 2018, an amended judgment was entered December 17, 2018.

*v. United States*, 365 U.S. 301, 304 (1961).[16] *Kentucky v. Stincer*, 482 U.S.

730, 745 (1987), generally supports Lang's argument that he had a

constitutional right to be present when his sentence was imposed. Dealing

with whether a defendant's rights were violated under the Due Process Clause

of the Fourteenth Amendment by his exclusion from a competency hearing, the

United States Supreme Court stated:

> The Court has assumed that, even in situations where the
> defendant is not actually confronting witnesses or evidence against
> him, he has a due process right "to be present in his own person
> whenever his presence has a relation, reasonably substantial, to
> the fulness of his opportunity to defend against the charge."
> *Snyder v. Massachusetts,* 291 U.S. 97, 105–106, 54 S. Ct. 330,
> 332, 78 L. Ed. 674 (1934). Although the Court has emphasized
> that this privilege of presence is not guaranteed "when presence
> would be useless, or the benefit but a shadow," *id.,* at 106–107, 54
> S. Ct., at 332, due process clearly requires that a defendant be
> allowed to be present "to the extent that a fair and just hearing
> would be thwarted by his absence," *id.,* at 108, 54 S. Ct., at 333.
> Thus, a defendant is guaranteed the right to be present at any
> stage of the criminal proceeding that is critical to its outcome if his
> presence would contribute to the fairness of the procedure.

*Id.*

RCr 8.28(1) reflects the notion that sentencing is critical to the outcome

of the criminal proceeding and that the defendant's presence at sentencing

contributes to the fairness of the procedure. RCr 8.28(1) provides that "[t]he

defendant shall be present at the arraignment, at every critical stage of the trial

---

[16] Kentucky's statutory presentence procedure likewise potentially aids the defendant in that regard. Pursuant to KRS 532.050, a presentence investigation report (PSI)—a report providing comprehensive background information about the defendant—is prepared to help the trial court in determining an appropriate sentence for the convicted felon. With the trial court giving due consideration of the PSI contents, the defendant, or his attorney, traditionally uses his presence at sentencing to exercise his statutory right to controvert the PSI's factual content and conclusions.

including the empaneling of the jury and the return of the verdict, and at the imposition of the sentence."

The Commonwealth does not dispute that Lang had a right to be present when his final sentence was entered. The Commonwealth instead argues that Lang waived his right to be present or otherwise invited the error by failing to raise an objection, agreeing with the trial court's issuance of the judgment of conviction at a later date. RCr 8.28 addresses the defendant's intentional refusal to appear at sentencing as waiver of the right to be present. RCr 8.28(1) states: "Upon a hearing and finding by the trial court, that a defendant in custody on any charge, including a felony, intentionally refuses to appear for any proceeding, including trial, short of physical force, such refusal shall be deemed a waiver of the defendant's right to appear at that proceeding." In support of the argument that Lang waived his right, the Commonwealth points to opportunities which Lang and his counsel did not use to object to the trial court entering final judgment without his presence. As described by the Commonwealth, the opportunities included the hearing of the Commonwealth's motion to amend the judgment of conviction and Lang's *pro se* motions, including his motion for a new trial or judgment notwithstanding the verdict.

We do not find the Commonwealth's arguments persuasive. Because there is nothing in the record to show that Lang relinquished the right to be present at sentencing, we conclude the trial court made a plain, fundamental error by imposing Lang's sentence without his presence. *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006); *Martin v. Commonwealth*, 207

S.W.3d 1, 5 (Ky. 2006). However, under RCr 10.26, manifest injustice must have resulted from the error in order for this Court to grant appropriate relief. We cannot conclude manifest injustice occurred here. Ultimately, "[m]anifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (quoting *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012)). Lang made a plea for leniency at the close of the penalty hearing and the trial court imposed the twenty-year sentence requested by the Commonwealth. Lang makes no attempt to show, and the record does not otherwise disclose, how his presence at the hearing would have resulted in a different sentencing outcome. *See Miller v. Commonwealth*, 391 S.W.3d 857, 866 (Ky. 2013); *Marshall v. Commonwealth*, 60 S.W.3d 513, 523 (Ky. 2001). Palpable error relief is not available to Lang.

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court judgment is affirmed.

All sitting. All concur.

18

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Kathleen Kallaher Schmidt
Assistant Public Advocates


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General