# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: AUGUST 14, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2024-SC-0170-MR

JESSE OOTEN      APPELLANT

V.      ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA SUMME, JUDGE
NO. 21-CR-01577

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Jesse Ooten appeals from his convictions by the Kenton Circuit Court following a jury trial. The jury found Ooten guilty of possession of a handgun by a convicted felon, theft by unlawful taking (a firearm), second-degree criminal mischief, and being a first-degree persistent felony offender (PFO 1). The jury recommended a sentence of ten years for the possession of a handgun conviction, five years for the theft by unlawful taking conviction, and twelve months together with a $500 fine for the criminal mischief conviction. The jury subsequently found Ooten to be a first-degree PFO and recommended enhancing the penalty for the first two felony convictions to twenty years of incarceration each with all sentences to run concurrently. The trial court followed the jury's recommendations and sentenced Ooten to a total of twenty

years. Ooten appeals to this Court as a matter of right. Finding no grounds for reversal, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 2021, Ooten was placed on a home incarceration program (HIP) and ordered to wear an ankle monitor as part of pretrial release on a domestic violence charge. Ooten could not return to his own home to serve pretrial release, so he stayed with his co-worker, Ed Yung, who drove Ooten to and from work and whose residence was designated as Ooten's official HIP location.

On November 4, 2021, Ooten was laid off from work and returned alone to Yung's home. However, Ooten could not get into Yung's home because he did not have a key and was not allowed to be in the home without Yung. Ooten removed a pickaxe from the backyard shed and used it to break out the backdoor window of Yung's home to enter. When Ooten entered, security cameras in the home activated and Yung received a notification on his cell phone. Upon being alerted, Yung called 911 and was able to view the footage being provided to him by his security system while speaking with the 911 operator. In his conversation with 911, Yung was able to identify Ooten. Videos from the security cameras showing Ooten's activities in the home were later shown to the jury at Ooten's trial. Inside the home Ooten used the pickaxe to first smash Yung's television before proceeding upstairs where he used the pickaxe to break into Yung's gun safe where he removed a Walther handgun. On the security video, Ooten can be seen walking around with the pistol in his

hand. While standing at the front door of the home, Ooten can be seen looking outside and tucking the pistol into his waistband before exiting.

In response to Yung's 911 call, Officer Gordon Purvis of the Covington Police Department, initially responded and a team was assembled to clear the house. After it was confirmed that Ooten was no longer inside Yung's home, the search was expanded and Ooten was eventually located sitting on a bench in Barb Cook Park where he was taken into custody. Ooten did not have the pistol he had taken on him when he was apprehended and told the officers that he had disposed of the firearm around a sewer somewhere between Yung's home and the park. The pistol was never recovered despite law enforcement efforts to locate it.

Ooten's actions resulted in two separate indictments which were prosecuted separately. In the first (Case No. 21-CR-01576), Ooten was charged with one count of tampering with a prisoner monitoring device, escape in the second degree, and second-degree PFO. That matter proceeded to trial in August 2022 which resulted in guilty verdicts on all charges. Those verdicts were subsequently affirmed by the Kentucky Court of Appeals. *Ooten v. Commonwealth*, No. 2022-CA-1436-MR, 2023 WL 8286937 (Ky. App. Dec. 1, 2023) (unpublished).

The appeal before us concerns the resolution of the charges from the second indictment (Case No. 21-CR-01577), which proceeded to trial on March 27, 2024. At trial, and in addition to the testimonial and video evidence already described, the Commonwealth presented proof from Yung regarding the

3

financial value of the damages he had sustained from Ooten's destruction of Yung's property, including the window, the gun safe and his television, each of which were destroyed by Ooten. The Commonwealth offered the following proof as to the totality of the financial harm committed by Ooten: (1) Yung produced a receipt in the amount of $299.08 to replace the broken window; (2) The retail price of a replacement gun safe was shown to be $249.99, but Yung opted to purchase a damaged replacement unit for $108.00; and (3) Yung produced a screen shot from Best Buy establishing that a television like the one destroyed had a retail price of $379.99, but explained that he was eventually able to source the television from another retailer at a better price, stating, "I wound up going, I think it was Walmart, so their price went down lower."

## II. ANALYSIS

Ooten raises two issues on appeal regarding the trial court's denial of Ooten's two motions for directed verdicts. Ooten argues that the trial court erred by not granting his motions for directed verdict on both the theft by unlawful taking of the firearm and the second-degree criminal mischief charges.

In considering whether a motion for directed verdict should be granted, "[t]he trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

As stated in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991):

4

If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appeal, the denial of a directed verdict motion is reviewed to determine whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017) (quoting *Benham*, 816 S.W.2d at 187).

## A. Was Ooten Entitled to a Directed Verdict on the Theft by Unlawful Taking Charge?

Ooten argues that the trial court erred when it denied his motion for a directed verdict as to the theft by unlawful taking charge because it was not proven that he intended to "deprive" Yung of the pistol he had taken since "permanent deprivation was not [Ooten's] intent for the gun" given he had taken the pistol while in a "distressed and fragile mental state" while contemplating suicide.

Ooten did not offer any proof whatsoever of alleged suicidal ideation during the guilt phase of the trial. It was not until a day later, after Ooten had been found guilty and took the stand during the penalty phase of the trial, that he made such representation. This argument was neither presented as evidence prior to Ooten's motion for a directed verdict, nor was it presented to the jury prior to its verdict of guilt. This argument was not even verbalized to the trial court within Ooten's motion for directed verdict. It is incomprehensible

5

to expect a trial court to consider a factual matter—of which it has no knowledge—when making legal determinations as to a defendant's entitlement to a directed verdict. Ooten's argument was not preserved for appellate review. Regardless, even had Ooten offered testimony or other timely evidence of his alleged intentions regarding the firearm, he would still not prevail on appeal.

Ooten cites to this Court's opinion in *Hall v. Commonwealth*, 551 S.W.3d 7, 13 (Ky. 2018), arguing that indifference to what happens to property is not enough to establish intent to permanently deprive. He also argues that disposing of property in an "easily locatable area" does not constitute an intent to permanently deprive an owner of their property. *Johnson v. Commonwealth*, 694 S.W.3d 232, 255 (Ky. 2023).

Kentucky Revised Statutes (KRS) 514.030(1)(a) provides in relevant part that a person is guilty of theft by unlawful taking when he: "Takes or exercises control over movable property of another with intent to deprive him or her thereof[.]" In turn, KRS 514.010(1)(a) and (b) define "deprive" as: "To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation[,]" *or* [t]o dispose of the property so as to make it unlikely that the owner will recover it."

The second statutory definition is applicable to the facts in this matter. While Ooten told the arresting officers that he had disposed of the pistol between Yung's home and the park where he was apprehended, the weapon was not recovered despite an extensive search by law enforcement. The pistol

6

was not "easily located" such that it could be, or ultimately ever was, returned to Yung.

The jury here could readily infer Ooten's intent "from the act itself or from the circumstances surrounding it." *Talbott v. Commonwealth*, 968 S.W.2d 76, 86 (Ky. 1998). Ooten was also "presumed to intend all logical and probable results of his conduct," and his intent could also be inferred from his actions preceding and following the charged offense. *Stopher v. Commonwealth*, 57 S.W.3d 787, 802 (Ky. 2001).

**B. Was Ooten Entitled to a Directed Verdict on the Second-Degree Criminal Mischief Charge?**

In his final argument, Ooten alleges that the proof offered by the Commonwealth of the damages he caused was not shown to exceed $500 and, therefore, he could not be found guilty of second-degree criminal mischief. Ooten argues that Yung's loss is only the value of the receipts that Yung produced at trial, which totaled $407.08 ($299.08 for the window and $108 for the gun safe) and therefore, the $500 threshold of the statute was not met. We disagree.

At the time of Ooten's trial, KRS 512.030, which has since been amended, read as follows:

> (1) A person is guilty of criminal mischief in the second degree when, having no right to do so or any reasonable ground to believe that he or she has such right, he or she:
>
> > (a) Intentionally or wantonly defaces, destroys, or damages any property causing pecuniary loss of five hundred dollars ($500) or more but less than one thousand dollars ($1,000); or
> >
> > (b) As a tenant, intentionally or wantonly defaces, destroys, or

7

> damages residential rental property causing pecuniary loss of five hundred dollars ($500) or more but less than one thousand dollars ($1,000).

(eff. July 14, 202 to July 14, 2024).

In *Crain v. Commonwealth,* 257 S.W.3d 924 (Ky. 2008), this Court adopted a fair market value approach to determining pecuniary loss of stolen or damaged property *in lieu* of requiring proof of the actual out-of-pocket expenses incurred by a victim. Therefore, the jury was not limited to only considering the monies actually paid by Yung to replace the items when determining the total fair market value of the damages caused by Ooten.

Ooten gives us no reason to doubt either that the gun safe he ruined had a fair market value of at least $249.99 or that the jury could assign a fair market value to the television of $379.99. The fair market value of the destroyed property was a value to be determined by the jury as the finder of fact. Ooten furnished no evidence of any contrary values while the Commonwealth offered competent and uncontradicted proof of the fair market value of both a comparable television and an undamaged gun safe along with the financial damages arising from Ooten's destruction of Yung's window.

The total value of the property destroyed by Ooten was objectively, and proven to be, in excess of $500.00. Therefore, "under the evidence as a whole," the trial court could not have reasonably determined, as a matter of law, that it would have been "clearly unreasonable for a jury to find guilt." *Lamb,* 510 S.W.3d at 325. Accordingly, the trial court did not err in denying Ooten's motion for a directed verdict on this charge.

8

### III. CONCLUSION

We affirm Ooten's convictions and the sentences imposed by the Kenton Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kayla D. Deatherage
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Solicitor General